GEORGE J. WAGNER AND PROPERTY OWNERS PROTEC-
TIVE ASSOCIATION, A CORPORATION OF NEW JER-
SEY, PLAINTIFFS-APPELLANTS, v. THE MAYOR AND
THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK,
DEFENDANTS-RESPONDENTS.

Argued April 8, 1957—Decided June 10, 1957.

*Mr. Harry Weltchek* argued the cause for the appellants (*Messrs. Weltchek & Weltchek,* attorneys).

Mr. Jacob M. Goldberg argued the cause for the respondents (Mr. Vincent P. Torppey, corporation counsel, attorney; Mr. Joseph A. Ward, on the brief).

Messrs. Leon S. Milmed, James Rosen and Ralph P. Messano filed a brief on behalf of City of Jersey City (Mr. James A. Tumulty, Jr., attorney), Township of Weehawken (Messrs. Milmed & Rosen, attorneys), Town of West New York (Mr. Samuel L. Hirschberg, attorney), and City of Hoboken (Mr. Robert F. McAlevy, Jr., attorney) as amici curiae.

The opinion of the court was delivered by

VANDERBILT, C. J.  The plaintiffs brought this action to enjoin the enforcement of an ordinance adopted by the City of Newark controlling rents and for a judgment declaring the ordinance invalid and unconstitutional.  On their motion for summary judgment in the Law Division of the Superior Court the ordinance was upheld and judgment granted in favor of the defendants, 42 N. J. Super. 193 (Law Div. 1956).  The plaintiffs appealed to the Appellate Division and, because of the public importance of the matter and the obvious conflict between the decision of the trial court in this case and that of the trial court in Grofo Realty Co. v. City of Bayonne, 24 N. J. 482, we certified both matters on our own motion.

When ten years of federal rent controls brought on by wartime conditions expired on July 31, 1953, a serious public emergency still existed in certain areas of this State due to a continued shortage of rental housing space.  The Legislature then deemed it essential to the health, safety and general welfare of all the people of the State that rent controls continue to be operative upon the expiration of federal law in those areas where conditions demanded it.  In this state of affairs it passed the State Rent Control Act of 1953, L. 1953, c. 216, N. J. S. 2A:42–14 et seq., and made its operation dependent upon the decision of the local governing bodies of each municipality.  As originally provided, such

controls were to be effective until December 31, 1954, but this date was extended by amendment to midnight June 30, 1956, by *L. 1954, c. 260, sec. 12, N. J. S. 2A*:42–51. As that date drew near it became obvious that further extension of the general act by the Legislature could not reasonably be expected. In the light of these circumstances, the governing bodies of 35 municipalities, including the City of Newark, believing that an emergency in rental housing still existed in their particular areas and that a termination of controls there would precipitate chaotic conditions that would adversely affect the health, safety and welfare of their inhabitants, petitioned the Legislature for the passage of special laws under the authority of *Article IV, Section VII, paragraph 10* of the *Constitution of* 1947 and *N. J. S. A.* 1:6–10 for authority to adopt local ordinances to provide for rent controls in their particular localities.

Before final action was taken on the petitions by the Legislature, the City of Newark, on June 21, 1956, adopted its own rent control ordinance, to become effective simultaneously with the expiration of state rent controls on June 30, 1956. The general object of this ordinance was to continue in force in the City of Newark the controls provided by the expiring state law. The preamble to the ordinance states that it was adopted "pursuant to the police powers of the City of Newark." Specifically, the ordinance established a Housing Rent Control Commission with power to promulgate rules and regulations and to carry out the objectives of the ordinance; it prohibited rental charges in excess of the lawful rents on June 30, 1956; it prohibited evictions so long as a tenant paid the rent to which the ordinance declares the landlord is entitled, and made provision for the regulation of evictions and dispossessions through the issuance of certificates of eviction by the rent commission. The ordinance made violators subject to a fine not exceeding $500 and made no mention of any termination date.

Thereafter, the Legislature enacted *L.* 1956, *c.* 146, *N. J. S.* 2A:42–56 to 2A:42–73, entitled:

"An Act authorizing certain municipalities to adopt, make, amend, repeal and enforce ordinances to provide for the regulation of rentals and the possession of housing space, with respect to certain properties, and to make necessary appropriations; providing for county rent control review boards in certain cases, imposing certain duties upon the State Rent Control Director, conferring jurisdiction on the county district courts, in certain cases, and providing for the operation of the act in said municipalities when adopted by ordinances of the governing bodies of said municipalities."

This act became effective July 31, 1956 and was made retroactive to midnight June 30, 1956, *N. J. S.* 2A:42–71. The preamble to the act acknowledges the petitions of the municipalities and recites that:

"The Legislature deems it to be for the best interests of the people to pass *1* special law concerning this subject instead of a large number of special laws pursuant to said petitions in order *to secure reasonable uniformity* and to insure certain restrictions and limitations which shall be *applicable to all said ordinances when adopted by the respective governing bodies of said municipalities;* * * *." (Emphasis supplied)

By this law the 35 municipalities, including Newark, that had petitioned the Legislature prior to the passage of the act, were permitted to adopt ordinances for the purpose of regulating rent control within their borders in a manner similar to that provided on a statewide basis by the prior rent control act, *L.* 1953, *c.* 216, *supra,* as amended and supplemented, and by the rules and regulations of the State Rent Control Director as were in effect and operation in the particular municipality on June 30, 1956, *N. J. S.* 2A:42–56 and 57. The law, however, gave rent increases to landlords of 15% in some cases and of 20% in others, *N. J. S.* 2A:42–66. It limited the effect and operation of any local ordinance adopted under the authority of the act to a date not later than December 31, 1957, the termination date of the act itself, and in conformity with the constitutional provision under which this action was taken, *Article IV, Section VII, paragraph 10, supra,* it provides that it

"* * * shall be inoperative in any municipality until it shall be adopted by ordinance of the governing body of such municipality * * *."

*Chapter* 146 has not been adopted by the City of Newark and therefore has not become operative in that municipality.

The plaintiffs on this appeal argue that the Newark ordinance was superseded by the state special law, *L.* 1956, *c.* 146, *supra,* and that this statute precludes the exercise by the City of Newark of any power to adopt a rent ordinance or to continue the enforcement of any such ordinance in existence at the time of the adoption of the state statute. They urge that the ordinance is void because it substantially conflicts with the terms and provisions of the state law. They also contend that the ordinance is invalid because it runs counter to the provisions of other state statutes of general applicability, *i. e., N. J. S.* 2A:42–5, 6 and 7, relating to the liability of a holdover tenant for double rent and the right of a landlord under certain circumstances to institute an action for possession without formal demand or reentry; *N. J. S.* 2A:18–53, 60 and 61, regarding summary proceedings in the district court; and *N. J. S.* 2A:35–1 and 2, dealing with actions for possession of real property brought in the Superior Court. Continuing in this vein, the plaintiffs further assert invalidity because of the conflict of the ordinance with the general public policy of the State with regard to emergency rent controls. Moreover, the plaintiffs contend that the Newark ordinance interferes with the constitutional rights of property owners and violates the principles of due process and equal protection and impairs the obligation of contracts in existence at the time the ordinance was adopted. They argue, further, that the control of rents and evictions is not within the police power delegated to municipalities; that the city had no power to declare that an emergency existed in housing, because the Legislature in refusing to extend the Rent Control Act of 1953 declared as a matter "of fact and law" that the emergency no longer existed; and that even the existence of an emergency in fact within the City of Newark did not give the city any greater power than it otherwise had, because an emergency does not create a remedial power but merely furnishes the occasion for its exercise. Finally,

the plaintiffs argue that the functions attempted to be vested in the municipal officials by the ordinance amount to an improper and unconstitutional redelegation of the original legislative powers delegated by the Legislature to the municipal governing body alone.

The defendants, on the other hand, contend that the control of rents and evictions, when necessary to remedy an existing evil within the local domain, is within the municipal police power granted by the Home Rule Act, *R. S.* 40:48–2, and of the Optional Municipal Charter Law, *N. J. S. A.* 40:69*A*–29 and 30. They also contend that the municipal police power so granted is not affected by *L.* 1956, *c.* 146, *supra,* because its application is expressly made subject to formal adoption by the City of Newark and no such action has been taken. They say there is no real conflict between the two enactments because the state law is not applicable within the area covered by the ordinance. They assert, further, that the constitutional rights of the plaintiffs are not violated by the operation of the ordinance since all property rights and contracts are subject to a valid exercise of the police power for the public good, and that the right of a landlord to possession and to invoke the eviction processes of the common law and under our statutes is not denied by the local ordinance but only delayed or checked in operation to the extent the contract of letting or leasing has yielded to the application of the local police power. In answer to the plaintiffs' contention that the ordinance provides for an unlawful redelegation of legislative power to the commission created under the ordinance, the defendants urge that the functions and duties of the municipal officials acting under the ordinance are administrative and not legislative in nature, controlled by adequate standards expressed in the ordinance, and do not offend the principles of delegation of powers.

The *amici curiae,* on behalf of Jersey City, Hoboken, Weehawken and West New York, argue in favor of a municipal power under the Home Rule Act, *R. S.* 40:48–2, to adopt ordinances such as the one in issue here. They

contend that the ordinance does not offend the conditions set forth in the grant of such power, nor does it conflict with any public policy of this State.

Thus, many issues are raised and argued, but the crucial question here is whether the City of Newark has power to legislate by way of ordinance with respect to matters of rent control and evictions. All other issues must perforce await the resolution of that question, for in the absence of such basic power all else in the case becomes mere academic discussion.

It is fundamental in our law that there is no inherent right of local self-government beyond the control of the State, and that municipalities are but creations of the State, limited in their powers and capable of exercising only those powers of government granted to them by the Legislature, *Bucino v. Malone,* 12 *N. J.* 330, 345 (1953) ; *Fred v. Mayor and Council, Old Tappan Borough,* 10 *N. J.* 515, 518 (1952) ; *Magnolia Development Co. v. Coles,* 10 *N. J.* 223, 227 (1952) ; *Edwards v. Mayor, etc., of Borough of Moonachie,* 3 *N. J.* 17, 22 (1949) ; *Jersey City v. Martin,* 126 *N. J. L.* 353, 361 (*E. & A.* 1941) ; *City of Trenton v. State of New Jersey,* 262 *U. S.* 182, 187, 43 *S. Ct.* 534, 67 *L. Ed.* 937, 942 (1923). In the *Martin* case, our former Court of Errors and Appeals unanimously expressed the guiding principles in holding:

"A municipality is merely a political subdivision or department of the state. It is an agency created for the exercise, within the prescribed limits, of the governmental functions and powers of the state. It is but the creature of the state, and exists at its pleasure. As respects both its strictly governmental office and its municipal character for the conduct of local self-government, the Legislature is the exclusive source of its authority; and its continued corporate existence, as well as the scope of its powers, depends upon its will. Unless constitutionally secured, the municipality has no inherent right of self-government beyond the control of the state."

The *Constitution* of 1947, *Article* IV, *Section* VII, *paragraph* 11, secures to municipalities not only those powers granted to them in express terms "but also those of necessary or fair implication, or incident to the powers expressly

conferred or essential thereto, and not inconsistent with or prohibited by this Constitution or by law," and it commands that all constitutional or statutory provisions concerning municipalities "shall be liberally construed in their favor."

Among the express powers granted to all municipalities by the Legislature is the broad general police power conferred by *R. S.* 40:48–2, part of the Home Rule Act of 1917, *L.* 1917, *c.* 152, *Article* XIV, *Section* 2, which provides:

"Any municipality may make, amend, repeal and enforce such other ordinances regulations, rules and by-laws *not contrary to the laws of this state* or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law." (Emphasis supplied)

The Legislature has also expressly granted similar broad powers to those particular municipalities that operate under the terms of the Optional Municipal Charter Law, *L.* 1950, *c.* 210, *N. J. S. A.* 40:69A–1 to 210. *N. J. S. A.* 40:69A–29 provides:

"Each municipality governed by an optional form of government pursuant to this act shall, subject to the provisions of this act or other general laws, have full power to:
\*         \*         \*         \*         \*         \*         \*         \*
(b) adopt and enforce local police ordinances of all kinds \* \* \* and to exercise all powers of local government in such manner as its governing body may determine; \* \* \*."

Municipalities that have adopted any of the optional plans of government provided by this act are governed by the general provisions of the act, the specific provisions applicable to the plan adopted, and by the general laws applicable to all municipalities and not inconsistent with the act, *N. J. S. A.* 40:69A–26 and 28. In addition, *N. J. S. A.* 40:69A–30 provides:

"The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumera-

tion of municipal powers contained in this act or in any other general act shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to municipalities governed by an optional plan under this act, whether in the form of specific enumeration of general terms, shall be liberally construed, as required by the Constitution of this State, in favor of the municipality." (Emphasis supplied)

The City of Newark has adopted the Mayor-Council Plan C of the Optional Municipal Charter Law, *N. J. S. A.* 40:69*A*–55 to 60, and operates under the terms of that law. All of the foregoing provisions are therefore applicable to it.

The extent of the power of a municipality to legislate concerning matters affecting the health, safety and welfare of its inhabitants and their property has been the subject of much judicial consideration. *Adams Newark Theatre Co. v. City of Newark,* 22 *N. J.* 472 (1956); *Weiner v. Borough of Stratford, County of Camden,* 15 *N. J.* 295 (1954); *Grogan v. DeSapio,* 11 *N. J.* 308 (1953); *Fred v. Mayor and Council, Old Tappan Borough, supra,* 10 *N. J.* 515 (1952); *Board of Health, Weehawken Tp. v. New York Central R. Co.,* 10 *N. J.* 294 (1952); *State v. Mundet Cork Corp.,* 8 *N. J.* 359 (1952); *Edwards v. Mayor and Council of Borough of Moonachie,* 3 *N. J.* 17 (1949); *N. J. Good Humor, Inc., v. Board of Com'rs of Borough of Bradley Beach,* 124 *N. J. L.* 162 (*E. & A.* 1939); *O'Mealia Outdoor Advertising Co. v. Mayor and Council of Borough of Rutherford,* 128 *N. J. L.* 587 (*Sup. Ct.* 1942).

In *Fred v. Mayor and Council, Borough of Old Tappan, supra,* 10 *N. J.* 515 (1952), the constitutional and statutory provisions under discussion were particularly considered. In that case, relying on the broad grant of public power under *R. S.* 40:48–2, *supra,* the municipality adopted an ordinance regulating the excavation and removal of soil for sale. The power was challenged on the ground that the ordinance constituted an invasion of the right to acquire, possess and protect property, that it took private property for public

use without compensation and violated the due process requirements of the 14th Amendment of our Federal Constitution. We there held the ordinance was a valid exercise of the broad governmental and police powers granted to municipalities under *R. S.* 40:48–2 and stated in 10 *N. J.,* at *pages* 519–521 that:

"It would appear that this statute [*R. S.* 40:48–2] is susceptible of two different interpretations: one that * * * it confers no separate and distinct powers upon a municipality, but merely grants in terms powers incidental to those conferred by other statutes; the other that the statute constitutes an express grant of broad governmental and police powers to all municipalities and that the last clause is merely an added grant of incidental powers. This latter view finds considerable support in the cases, *R. S.* 40:48–2, being frequently cited as a source of general municipal police powers, see [citing cases]. This interpretation of *R. S.* 40:48–2 as an express grant of general police powers to municipalities has been made impregnable by the continued legislative acquiescence therein, by the mandate of *Article* IV, *Section* VII, *paragraph* 11 of the *Constitution of* 1947 that acts concerning municipalities be liberally construed, and by the adherence thereto of the more recent judicial decisions, [citing cases].

Plainly, therefore, *R. S.* 40:48–2 must be considered as an express grant of broad general police powers to municipalities. * * * As the law now stands any municipality, in addition to any powers elsewhere more specifically granted, has authority by virtue of *R. S.* 40:48–2 to take such action 'as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and general welfare of the municipality and its inhabitants,' subject only to the limitation that such action not be prohibited by or inconsistent with the Constitution or the other statutes."

In the *Fred* case we were but merely expressing and giving effect to the basic purpose behind the provision of the 1947 *Constitution, Article* IV, *Section* VII, *paragraph* 11, *supra,* calling for a liberal construction of municipal powers; see 1 *Proceedings of Constitutional Convention of* 1947, *pp.* 142, 302, 402–3, 415–16, 449–50 and 763, and monograph entitled *"Home Rule"* in 2 *Id.,* at *p.* 1729, which indicates that the present constitutional provision calling for liberal construction of powers granted to municipalities was designed to nullify the strict construction principle then in force and to do away with the necessity of expressly granting to munic-

ipalities all of the powers needed by them; *cf. N. J. Good Humor, Inc., v. Board of Com'rs of Borough of Bradley Beach,* 124 *N. J. L.* 162 (*E. & A.* 1940).

And while there are no cases dealing specifically with the grant of similar powers under *N. J. S. A.* 40:69*A*–29 it is impossible to conceive of any different interpretation for it particularly in view of the broad language of *N. J. S. A.* 40:69*A*–30.

[2, 3] But the constitutional mandate to favor municipalities in the construction of statutory grants of power constitutes no warrant to read into these statutes a power that is not there and not intended to be given, *Magnolia Development Co., Inc. v. Coles, supra,* 10 *N. J.* 223, 227 (1952). Provisions for home rule have not given omnipotence to local governments. Matters that because of their nature are inherently reserved for the State alone and among which have been the master and servant and landlord and tenant relationships, matters of descent, the administration of estates, creditors' rights, domestic relations, and many other matters of general and statewide significance, are not proper subjects for local treatment under the authority of the general statutes. The broad grant of power under *R. S.* 40:48–2, *supra,* and *N. J. S. A.* 40:69*A*–29 and 30, *supra,* relates to matters of local concern which may be determined to be necessary and proper for the good and welfare of local inhabitants, and not to those matters involving state policy or in the realm of affairs of general public interest and applicability. In *Paul v. Gloucester County,* 50 *N. J. L.* 585, 601–602 (*E. & A.* 1888) our former Court of Errors and Appeals noted this inherent characteristic of some subjects of governmental concern saying:

"The limitation upon legislative power is in the subject itself, and not in the nature or character of the political subdivision of the state to which the grant is made.

Can the right to declare what the law of attachment shall be, or how the action of ejectment shall be conducted or what the law of descent shall be, be committed to a city any more than to a county?"

And in *Adler v. Deegan,* 251 *N. Y.* 467, 167 *N. E.* 705, 713 (*Ct. App.* 1929), Mr. Justice Cardozo in a similar vein stated:

"There are other affairs exclusively those of the State, such as the law of domestic relations, of wills, of inheritances, of contracts, of crimes not essentially local (for example, larceny or forgery), the organization of courts, the procedure therein. None of these things can be said to touch the affairs that a city is organized to regulate, whether we have reference to history or to tradition or to the existing forms of charters."

Were this not so, then municipalities under these general statutes could legislate on any subject not expressly forbidden to them by law, with only the limitation that their action be not inconsistent with the Constitution or other statutes. This goes far beyond the purpose of the home rule provisions and the related sections of our *Constitution of* 1947; see 1 *Proceedings of Constitutional Convention of* 1947, *supra, pp.* 142, 302, 402–3, 415–16, 449–50 and 763.

In the landlord and tenant field, long before there arose in this State any question as to the propriety of municipal rent control or as to the scope of the powers granted in this regard to municipalities under statutes construed in the light of our new constitutional provisions, the Legislature had declared this relationship to be one of general concern; see *N. J. S.* 2A:42–1 to 42–13, and the predecessor statutes.

Moreover, legislative history since the inception of federal controls after the beginning of World War II shows a clear recognition that rent control was not a matter within the realm of municipal power without express authority from the State. The standby rent control law, *L.* 1950, *c.* 234, *N. J. S.* 2A:42, *p.* 243, which was to become operative in the event of termination of federal controls, initially declared the non-existence of any municipal power in this regard. The Rent Control Act of 1953, *L.* 1953, *c.* 216, *supra, N. J. S.* 2A:42–14 *et seq.,* which took effect on the termination of federal controls in July 1953, similarly negated any municipal power except in a subordinate way, to determine whether local conditions required the operation of rent

controls. Then, as a matter of express declaration in the subsequent amendment to that act, *L.* 1954, *c.* 260, it was provided by the Legislature that rent controls once ended in a municipality "may not thereafter be reinstated," *N. J. S.* 2*A* :42–54. Furthermore, the action of the Legislature in response to the petitions of the 35 municipalities seeking special authority to adopt local ordinances to provide rent control, *L.* 1956, *c.* 146, *N. J. S.* 2*A* :42–56 to 73, *supra,* is in itself as conclusive an indication of legislative will as one might expect to find short of a positive expression saying that municipalities have no power to control rents on a local level under the general statutes, for it would be wholly incongruous for the Legislature to limit the power of the 35 municipalities in which emergencies were claimed to exist and at whose instance the law was passed if there was power to act under the general home rule provisions.

■ If further reason is necessary to demonstrate the impropriety of the action taken by the City of Newark we need but say that attached to every ordinance adopted by a municipality is the implied condition that it must yield to the predominant power of the State, 6 *McQuillin, Municipal Corporations,* § 21.32; *Magnolia Development Co., Inc., v. Coles, etc., supra,* 10 *N. J.* 223 (1952) ; *Fred v. Mayor and Council, Old Tappan Borough, supra,* 10 *N. J.* 515 (1952) ; *State v. Mundet Cork Corp., supra,* 8 *N. J.* 359 (1952). To hold otherwise, would lead to confusion and absurd results. And so it is that if the control of rents by a municipality, independent of a state enactment covering the same subject, is incompatible with the public policy of the State or with the intent and purpose of the Legislature manifested by its enactments, the attempt at control on a local level is void, *Magnolia Development Co., Inc. v. Coles, supra,* 10 *N. J.* 223 (1952) ; *cf. Edwards v. Mayor, etc., of Borough of Moonachie, supra,* 3 *N. J.* 17 (1949), and see 5 *McQuillin, Municipal Corporations,* § 15.20.

The preamble to *L.* 1956, *c.* 146, *supra,* as we have seen, expressly discloses an intention on the part of the Legislature to make the control of rents *uniform* in those areas where

the local authorities find a public emergency in housing still exists and that it deems such a course to be in the best interests of the people "of the state as a whole." To give the act the construction contended for by the defendants would be to brand the legislative enactment a useless measure, for this would mean that the alleged coexisting power in the municipality could render the intention expressed in the preamble totally ineffective.

■ By permitting the Rent Control Act of 1953, *supra*, to expire the Legislature indicated that rent control was at an end in New Jersey except in those municipalities that qualified under the terms of the subsequent special act, *chapter* 146 of the *Laws of* 1956, by taking appropriate conforming action. The City of Newark did not take appropriate action by adopting a conforming ordinance and it had no power to legislate other than in the manner expressed in the special law.

■ Further discussion of the issues raised is unnecessary. The judgment below is reversed and the ordinance of the City of Newark, here involved, is hereby declared to be void and of no effect.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD and BURLING—5.

*For affirmance*—None.