255 N.J. Super. 218 (1992)
604 A.2d 972
UPPER DEERFIELD TOWNSHIP, PLAINTIFF-APPELLANT,
v.
SEABROOK HOUSING CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1991.
Decided March 20, 1992.
*219 Before Judges BILDER, STERN and KEEFE.
Theodore E. Baker argued the cause for the appellant (Lummis, Fisher, Krell & Baker, attorneys; Marian E. Haag, on the brief).
Isabella A. Garofola argued the cause for the respondent (Adler, Neski, Johnson & Garofola, attorneys).
The opinion of the court was delivered by KEEFE, J.A.D.
The issue to be decided is whether an ordinance requiring the seller of land containing a structure to obtain a certificate of occupancy prior to sale regardless of its intended use by the prospective buyer is invalid as applied to defendant Seabrook Housing Corporation (Seabrook). We hold that it is and affirm the dismissal of the municipal court complaint against Seabrook.
The facts are not disputed. On September 3, 1987 Upper Deerfield Township (the Township) adopted the "Boca National Existing Structures Code/1987, Second Edition," which was incorporated into Chapter 50 of the Township Code and known as the "Existing Structures Code." Upper Deerfield, N.J., Code ch. 50, art. I, § 1 (1989). On September 7, 1989 the *220 Township adopted an amendment to the Existing Structures Code which is the focal point of this proceeding. The amendment was designated as Chapter 50-7 (hereinafter referred to as § 7) and entitled "Certificate of Occupancy." The ordinance in relevant part provides:
a. No owner or agent thereof shall hereafter sell, rent, lease or let to any person or persons, whether or not for a consideration, any dwelling, dwelling unit, commercial, office, industrial, warehousing or storage, assembly or recreational space of facility within any structure or building, or premises, except vacant land for agricultural purposes, unless a Certificate of Occupancy shall first have been obtained from the Housing Officer. Said Certificate shall certify that the building or unit, premises or combination thereof is fit for human habitation and complies with the requirements of all ordinances of the Township of Upper Deerfield which relate to purposes of use thereof....
Upper Deerfield, N.J., Code ch. 50, art. III, § 7 (1989).
On August 28, 1989, Seabrook entered into an agreement to sell a parcel of land it owned in the Township containing a house that had been vacant for 15 years. On November 15, 1989, Seabrook transferred title to this property to the purchaser without obtaining a certificate of occupancy as required by § 7 of the Township code. Instead, the purchaser by contract assumed the obligation of obtaining a certificate of occupancy and making any repairs required by the Township.
When the Housing Officer of the Township became aware of the sale, Seabrook was charged with a violation of the ordinance. Seabrook was found guilty in the Township Municipal Court. It was fined $100 and $25 court cost and ordered to comply with the ordinance within two weeks. On Seabrook's application for a de novo trial in the Law Division, the judge raised the issue of the constitutionality of the ordinance and requested the parties to brief the issue. Subsequently, the judge found that § 7 was invalid. He concluded that the ordinance was overbroad in its regulatory reach because in "requiring an occupancy permit before an abandoned vacant structure may be sold [the ordinance] does not bear a real and substantial relationship to a legitimate government purpose." 255 N.J. Super. 682, 689, 605 A.2d 1160, 1163 (Law Div. 1991).
*221 In Town of Phillipsburg v. Schultz, 244 N.J. Super. 715, 583 A.2d 419 (Law Div. 1990), a case cited by the Law Division judge in this matter, the court struck down a Phillipsburg ordinance similar to the one in question. The judge in that case interpreted the Phillipsburg ordinance to prevent a sale of property without an occupancy permit. He noted that the literal application of the ordinance would prevent transfers of title in many situations in which the seller simply did not have the means available to make the repairs necessary to meet the standards of habitability.
Builders unable to complete construction of residences or apartments, due to financial or other problems, would be unable to unload  to sell their interest to some other party. Heirs and devises would be unable to sell their interest in a property if it was not habitable. An owner's right to sell any but habitable buildings would be prohibited.
Id. at 717, 583 A.2d 419. In order to correct the evil perceived from the application of the ordinance in all cases, the judge concluded that an ordinance which in any way regulated the sale of residential property was beyond the police power of the municipality. The court's conclusion was based upon an interpretation of N.J.S.A. 40:48-2.12m which provides that a municipality may adopt an ordinance requiring the owner of residential rental property to obtain a certificate of "inspection or occupancy" for the property prior to rental or lease involving a new occupancy. The judge reasoned that, because the Legislature did not specifically authorize a municipality to adopt an ordinance requiring a certificate of occupancy with respect to the sale of property containing a structure, there was a legislative intent not to grant such authority. He concluded that because "a municipality is but `a creature of the State, capable of exercising only those powers granted to it by the Legislature' the municipality had no authority to regulate the sale of property by requiring pre-sale inspections." Id. (quoting Moyant v. Borough of Paramus, 30 N.J. 528, 154 A.2d 9 (1959)).
While we agree with the result in Town of Phillipsburg v. Schultz, supra, we disagree with its apparent conclusion that a municipality lacks the power to impose pre-sale inspections of *222 property. We disagree with the Law Division opinion in this case to the extent that it incorporated that conclusion. We hold that a municipality may, by a properly drafted ordinance, use the occasion of a sale to trigger an inspection of property designed to accomplish the public health and safety interests of the municipality and its inhabitants and that such an ordinance would not be ultra vires the legislative delegation of police power contained in N.J.S.A. 40:48-2 and, more particularly, N.J.S.A. 40:48-2.12a.
N.J.S.A. 40:48-2 contains the general expression of the Legislature's grant of police power to municipalities. It provides that:
[a]ny municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.
In Quick Chek Food Stores v. Township of Springfield, 83 N.J. 438, 416 A.2d 840 (1980), the Supreme Court made it clear that the power to adopt ordinances for the public health, safety and welfare of a municipality and its inhabitants is coterminous with the police power of the Legislature, and, thus, a municipality may enact regulatory ordinances on any subject of local concern which is reasonably related to legitimate objects of public health, safety and welfare, provided the State has not preempted the field.
The Assembly Commerce Industry and Professions Committee Statement attached to N.J.S.A. 40:48-2.12m supports the general rule announced in Quick Chek. It makes it clear that the legislative purpose in passing the statute was to remove any doubt that courts may have had concerning a municipality's authority to adopt such ordinances.
Although many municipalities have such ordinances in effect, some recent court decisions have created some confusion as to whether municipalities have authority for such ordinances.
*223 L. 1979, c. 476, Assembly Commerce, Industry & Professions Committee Statement.
The Assembly Statement may very well have been referring to Dresner v. Carrara, 69 N.J. 237, 353 A.2d 505 (1976), in which the Supreme Court specifically refrained from ruling upon the validity of the Borough of Montvale's regulation permitting the issuance of a certificate of occupancy "[u]pon written request from the owner ...," id. at 243 n. 2, 353 A.2d 505, because the ordinance was not "specifically challenged" and the issue had not been briefed or argued. Id. at 243, 353 A.2d 505. Nonetheless, it is interesting to note that in discussing the subject the Court noted:
It has also been brought to our attention that some municipalities require a purchaser of property to secure such a certificate before going into possession, the application affording the building inspector an opportunity to examine the property in order to assure that all municipal regulations and requirements are being met. Perhaps the requirement in the Montvale ordinance requiring the issuance of a certificate of occupancy whenever there is a change of tenant has the same purpose in view. There may be, or there may later develop, other occasions when such a certificate will serve a useful and valid end in land use control.
Id. at 242-43, 353 A.2d 505.
Later, in Dome Realty, Inc. v. Paterson, 83 N.J. 212, 226, 416 A.2d 334 (1980), the Court observed that "[l]ocal housing conditions ... present community needs that are ideally suited for local intervention.... Those matters that bear a close relation to the subject matter of local zoning ordinances  the conditions and use of land and its improvements ... are equally appropriate for local treatment." Id. Although the Dome court was addressing a municipal ordinance which required a certificate of occupancy when there was a change in the occupant of a rental unit, the Court cited with approval the observation made in Dresner that "[t]here may be, or there may later develop, other occasions when such a certificate will serve a useful and valid purpose in land use control." Id. 83 N.J. at 231, 416 A.2d 334 (quoting Dresner, supra, 69 N.J. at 243, 353 A.2d 505). The Court found that the Legislature's delegation of authority to municipalities permitting the adoption of ordinances pertaining *224 to certificates of occupancy came not from the narrow provisions of N.J.S.A. 40:48-2.12m but rather from the omnibus provisions of N.J.S.A. 40:48-2, and the more specific statute dealing with the power to regulate the conditions of housing found in N.J.S.A. 40:48-2.12a. Id. 83 N.J. at 231-32, 416 A.2d 334. Thus, N.J.S.A. 40:48-2.12m does not warrant the restrictive interpretation imparted to it in Town of Phillipsburg.
It is clear to us that a municipality may adopt an ordinance which is properly designed to "prevent and abate conditions ... harmful to the health and safety of the occupants of the said buildings and structures and the general public in the municipality" even though the regulation is triggered by a sale rather than a rental of the premises. N.J.S.A. 40:48-2.12a (emphasis added). In Katobimar Realty Co. v. Webster, 20 N.J. 114, 118 A.2d 824 (1955), the Supreme Court held:
The police function cannot be expressed in terms of a definitive formula that will automatically resolve every case, for its quality and scope are commensurate with the public exigencies arising from ever-changing social and economic conditions. But it is basic to zoning, as with every exercise of police power, that it be contained by the rule of reason; constitutional due process and equal protection ordain that the exertion of the authority should not go beyond the public need; there cannot be unnecessary and excessive restrictions upon the use of private property or the pursuit of useful activities; a substantial intrusion upon the right infringes essential individual liberties immune to legislative interference. The restrictions may be so unreasonable as to be confiscatory, and the regulation then transgresses the organic law as arbitrary and oppressive.
The police power is the public right to reasonable regulation for the common good and welfare. The constitutional principles of due process and equal protection demand that the exercise of the power be devoid of unreason and arbitrariness, and the means selected for the fulfillment of the policy bear a real and substantial relation to that end.
Id. at 122-23, 118 A.2d 824.
Here, the Township's ordinance arguably interferes with Seabrook's right to acquire, own and dispose of real property, a right that is within the protective scope of the Fourteenth Amendment to the United States Constitution and Article I, § 1 of the New Jersey Constitution. That right, however, is subject *225 to the reasonable exercise of the police power. See Jones v. Haridor Realty Corp., 37 N.J. 384, 391, 181 A.2d 481 (1962). Therefore, the appropriate inquiry in a case of this nature is whether the Township ordinance enacted under the police power, affecting private rights as it does, evidences a public need that justifies governmental action and whether the restrictions imposed unreasonably and irrationally exceed the public need. Southland Corp. v. Township of Edison, 217 N.J. Super. 158, 173, 524 A.2d 1336 (Law Div. 1986), aff'd o.b., 220 N.J. Super. 294, 531 A.2d 1361 (App.Div. 1987).
Applying that standard to the ordinance, we find that it must be invalidated, not because a municipality may not act in this context, but because its literal application to every sale of real estate containing a structure reaches beyond the legitimate police power concerns of the municipality and becomes confiscatory. While the Township may have a legitimate interest in the health and safety of people who are about to occupy structures within its borders and may also have an interest in protecting the general health and safety of its citizens from hazards posed by vacant buildings, the provisions of the subject ordinance do not reasonably and rationally achieve the public need.
As presently worded, the ordinance requires a seller, as a condition of sale, to obtain a certificate of occupancy which "shall certify that the building or unit, premises or combination thereof, is fit for human habitation and complies with the requirements of all ordinances of the Township of Upper Deerfield which relate to purposes of use thereof." Upper Deerfield, N.J., Code ch. 50, art. III, § 7. Thus, the ordinance would apply to a transaction regardless of whether the buyer intends to occupy the structure. Consequently, a seller, such as Seabrook, would be obligated to make a vacant, boarded-up building "fit for human habitation and [in compliance] with the requirements of all ordinances of the Township ... which relate to purposes of use thereof even if the purchaser wants to tear it down." Id. (emphasis added). In addition, the ordinance would prevent a sale of property which the buyer intends to *226 occupy where the seller is financially incapable of making the property conform to the habitability requirements of the code but where the buyer is willing to assume that responsibility. A municipality cannot conceivably have an interest in who bears the cost of bringing the structure within compliance in terms of either occupancy or vacancy.
However, the Township contends that we cannot read § 7 of the Existing Structures Code without considering its relationship to other provisions of the same Code.[1] The Township contends that when § 7 is read in connection with § ES-106.2 and § ES-107.5 of the same Code, it is readily apparent that the purpose of § 7 is to allow the "Township to take stock of its housing and to intervene and examine the existing structures in the Township in order to determine if the Existing Structure Code has been violated, if condemnation or demolition should occur, if boarding up of a vacant structure has been properly completed, or if repairs should be made." We agree that if the three provisions of the code could be construed to produce a procedure which fulfills the foregoing statement, the provisions of § 7 would be unobjectionable. However, a fair reading of those provisions does not permit such a conclusion.
Section ES-106.2 of the Code addressing the subject of vacant buildings provides as follows:

Closing of vacant structures: If the structure . .. is vacant and unfit for human habitation, occupancy or use and is not in danger of structural collapse, the code official shall be permitted to post a placard of condemnation on the premises and order the structure closed up so it will not be an attractive nuisance to youngsters. Upon failure of the owner to close up the premises within the time specified in the order, the code official shall cause it to be closed....
*227 Upper Deerfield, N.J., Code ch. 50, art. I, § ES-106.2 (1989) (emphasis added). Section ES-107.5 of the Code which deals with transfer of ownership provides as follows:

Transfer of ownership: It shall be unlawful for the owner of any dwelling unit or structure who has received a compliance order or upon whom a notice of violation has been served to sell ... or otherwise dispose of to another until the provisions of the compliance order or notice of violation have been complied with, or until such owner shall first furnish the grantee ... a true copy of any compliance order or notice of violation issued by the code official and shall furnish to the code official a signed and notarized statement from the grantee . .. acknowledging the receipt of such compliance order or notice of violation and fully accepting the responsibility without condition for making the corrections or repairs required by such compliance order or notice of violation.
Id. § ES-107.5. The most that we can infer from the preceding sections of the Code is that the municipality has specific regulations dealing with the safety of vacant structures, and a seller may convey property notwithstanding that a "compliance order or ... [a] notice of violation" has been issued to the seller so long as the buyer acknowledges the existence of the compliance order or notice of violation and "fully accept[s] the responsibility without condition for making the corrections or repairs required...." Id.
However, neither section refers to § 7, nor does § 7 refer to either § ES-106.2 or § ES-107.5. Nowhere does § 7 state that, in the event a certificate of occupancy cannot be issued because the premises are unfit for human habitation or do not otherwise comply with the requirements of the Township code respecting such property, a "compliance order" or a "notice of violation" will be issued in its place so the property can be sold in accordance with the provisions of § ES-107.5 of the Code. Indeed, the opposite is true. Section 7 provides in relevant part that "no owner ... shall ... sell ... any dwelling ... unless a certificate of occupancy shall first have been obtained from the Housing Officer. Said certificate shall certify that the building or unit ... is fit for human habitation and complies with the requirements of all ordinances of the Township of Upper Deerfield which relate to purposes of use thereof." Upper Deerfield, N.J., Code ch. 50, art. III, § 7 (emphasis added). The *228 ordinance is unmistakably clear in the singular purpose of its goal. No form of judicial surgery will save it.
Furthermore, it must be remembered that the ordinance is penal in nature. As such, it must clearly inform a citizen who may be affected by its terms the perimeters of lawful and nontransgressive conduct. Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983). The interpretation which the Township now asks us to give § 7 is not clear on its face nor fairly implied when interpreted in connection with other relevant provisions of the Existing Structures Code. Therefore, § 7 must be invalidated and the complaint against defendant dismissed.[2]
Affirmed.
NOTES
[1] This argument was not specifically advanced to the trial judge. However, we consider it nonetheless in light of the public importance of the issue. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). We are advised that approximately 260 municipalities out of 570 within the State require a certificate of occupancy to sell a one or two family home.
[2] In light of our decision invalidating the ordinance in question, we need not address the issue presented by Seabrook on appeal, namely, that a certificate of occupancy inspection forces a property owner to submit to a warrantless search.