624 A.2d 1372

PROPERTY OWNERS AND MANAGERS ASSOCIATION, PLAIN-TIFF—RESPONDENT, v. TOWN COUNCIL OF PARSIPPANY-TROY HILLS, TOWNSHIP OF PARSIPPANY—TROY HILLS, AND MAYOR FRANK PRIORE, DEFENDANTS—APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued April 19, 1993—Decided May 12, 1993.

Before Judges J.H. COLEMAN, SHEBELL and A.M. STEIN.

*John H. Dorsey* argued the cause for appellants (*Dorsey and Fisher,* attorneys; *Mr. Dorsey,* of counsel and on the brief and reply brief).

*Charles X. Gormally* argued the cause for respondent (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys; *Mr. Gormally,* of counsel and on the brief; *Steven L. Fox,* on the brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

The issue presented is whether a municipality, in the absence of a rent control ordinance, may require property owners to remit property tax reductions and rebates to tenants. We conclude it may not.

On February 26, 1991, the Township of Parsippany–Troy Hills (Township) adopted Ordinance 91:10 (Ordinance) providing that owners of multi-residential apartments with six or more rented units must refund 75% of any successful tax appeal judgments to their tenants. Owners must also turn over 75% of any refund received as a result of litigation where the owners show that the Township failed to provide a municipal service for which the owner incurred costs or paid taxes. Under the Ordinance, the owners may retain the remaining 25% to offset expenses of obtaining the relief. In addition, where taxes are reduced without litigation below the level paid for the year 1990, the owner must grant the tenants 100% of such decrease by crediting the full amount of the reduction against the next six monthly rental payments or by paying the tenant directly. Originally exempted from the rebate requirement were "[o]wner-occupied two- and three-family dwellings and dwellings with less than six (6) rented units." The Township amended this provision so that only owner-occupied two- and three-family dwellings would be exempted.

On April 11, 1991, plaintiff Property Owners and Managers Association (POMA) filed a complaint in lieu of prerogative writ seeking various forms of relief, including a declaration that the Ordinance was unconstitutional. It also sought compensatory and punitive damages and attorney fees pursuant to 42 *U.S.C.* § 1988. After defendants filed their answer, POMA filed a motion for

summary judgment requesting the court to declare the Ordinance unconstitutional on equal protection and due process grounds. POMA also asserted that the Ordinance was invalid because it exceeded the powers granted to the Township.

On December 13, 1991, the Law Division judge declared the Ordinance to be unconstitutional. On March 9, 1992, an order was entered memorializing this oral decision. Thereafter, the Law Division judge granted defendants' motion for a stay of judgment.

Defendants filed a notice of appeal. Plaintiff responded with a motion to dismiss the appeal on the basis that the order did not dispose of all issues. We granted plaintiff's motion to dismiss the appeal.

Defendants then moved in the Law Division to dismiss all damage claims on the basis that POMA was a non-profit unincorporated association representing apartment owners and could not seek damages on behalf of its individual members. Plaintiff filed a cross-motion seeking permission to file an amended complaint naming the individual members of POMA as additional plaintiffs.

On May 10, 1992, the court entered an order granting plaintiff's cross-motion to file an amended complaint. The judge severed the damage claims from the constitutional issues and certified the order declaring the Ordinance unconstitutional as a final judgment pursuant to R. 4:42–2. Defendants filed a notice of appeal on May 20, 1992. We now affirm the order voiding the Ordinance.

In the mid–1960s, approximately twenty-five garden apartment complexes were constructed in the Township. These garden apartments ranged in size from 150 to 1000 units. POMA represents the owners of the garden apartments and their interests in approximately 6,788 rental units.

In *Parsippany Hills Assocs. v. Rent Leveling Bd.*, 194 *N.J.Super.* 34, 476 *A.*2d 271 (App.Div.), *certif. denied*, 97 *N.J.* 643, 483 *A.*2d 169 (1984), we outlined the Township's history of rent control. In April 1985, following a non-binding municipal referendum, all rent control in the Township was abolished, including a

provision requiring tax reductions or rebates to be shared with tenants. Since 1985, rents have been unregulated.

In the preamble to the new Ordinance, the Township sets forth its reasons for enacting "Subchapter 10–10 entitled 'Tax and Rental Rebates.'"

WHEREAS, as a result of a municipal referendum held on April 16, 1985, the Township's rent control ordinance was abolished, including those provisions which provided for tenants to share in tax reductions or rebates; and

WHEREAS, in the ensuing years without rent control being imposed rents have risen on the average of approximately 8% per year in the Township's 27 garden apartment complexes, some of which have been converted into condominiums while taxes have risen on an average of 5.16% (not including fire district taxes) per year over the same time period or more specifically on a year-to-year basis as follows:

| | % Rent Increase | % Tax Increase |
|------|-----------------|----------------|
| 1985 | 8.5% | (1.3)% |
| 1986 | 8.5% | 11.2% |
| 1987 | 13.5% | 1.9% |
| 1988 | 7.0% | 7.6% |
| 1989 | 7.0% | (1.4)% |
| 1990 | 4.0% | 10.4% |

. . . .

WHEREAS, it is generally accepted as a matter of public policy that tenants pay taxes whether directly or indirectly, and this principle has been the basis upon which the Tenants' Property Tax Rebate Act, *N.J.S.A.* 54:4–6.2 *et seq.* was adopted in 1976 and the basis upon which the courts of this State for nearly 20 years have upheld municipal ordinances which require owners of multifamily rental complexes to share with their tenants the benefit of real property tax reductions effectuated either by way of property tax relief programs or by way of successful tax appeals. (See *Inganamort v. Bor. of Fort Lee,* 120 *N.J.Super.* 286, 301–302 [293 *A.*2d 720] (Law Div.1972); aff'd 62 *N.J.* 521 [303 *A.*2d 298] (1973) (50%); *Leone Management Corp. v. West N.Y. Bd. of Comm'rs,* 130 *N.J.Super.* 569 [328 *A.*2d 26] (App.Div. 1976) (75%) and *Parsippany Hills Associates v. Rent Leveling Board, supra* (75%); and

WHEREAS, during the campaign conducted by the Parsippany–Troy Hills Property Owners Association known as POMA for the successful repeal of the Township's rent control ordinance, there was an implicit, if not explicit, representation by the owners of the various garden apartment complexes that if rent control was abolished, the owners would *not* file real property tax appeals, a representation accepted by the Mayor and other elected officials, who then endorsed the concept of eliminating rent control with the thought that the Township would not in the future be pressured financially with tax appeals because the owners would be able to achieve economic rents; and

WHEREAS, for a period of years, the owners of the garden apartment complexes adhered to their representation and no significant number of tax appeals were filed for the years 1986, 1987 and 1988, but in 1989, all of the garden apartment complexes, represented by POMA as well as others, filed tax appeals and have now routinely done so for the year 1990 and will probably do so for the year 1991; and

WHEREAS, none of these tax appeals nor has a suit involving solid waste collection yet been adjudicated, but if in fact the owners are successful to the extent represented by their attorneys, they will receive an enormous windfall in terms of tax refunds; and

WHEREAS, it cannot be effectively argued that in light of the fact that for five years the property owners have not had their rent increases limited by regulation, that all costs for solid waste collection and real estate taxes paid by the property owners have been indirectly paid by the rents collected from the tenants and not from the owners' capital or equity; and

WHEREAS, it would be inequitable not to require the owners to permit the tenants to share in any tax rebates or other refunds received from the Township that result in the refund of monies which indirectly represents the refund of rents; and

WHEREAS, the garden apartment complexes, which are represented by POMA have also instituted litigation entitled, *Property Owners and Managers Association v. Mayor & Town Council of Parsippany–Troy Hills and Township of Parsippany–Troy Hills*, Docket No. MRS–L–840–90, in which they seek to compel the Township to refund to them either the cost of solid waste collection incurred by them or taxes paid to the Township allegedly for solid waste collection, but for which POMA alleges the service has never been made available.

Section 10–10.6 sets forth the penalties an owner will incur for refusing to remit 75% of tax rebates to tenants.

Failure of any landlord to comply with the terms of this section, namely to make the refund to the tenant in one of two ways set forth above, shall be a violation of this ordinance and shall subject the landlord to a fine of $1,000.00 and/or thirty (30) days in jail. Failure to refund to each or any tenant, as specified, shall be considered a separate violation of this ordinance.

Section 10–10.7 provides a "hardship" exception to the above penalties.

In the event that a landlord shall believe that Sections 10–10.3 and 10–10.4 creates a hardship in that a 25% allowance for expenses for processing appeals and other types of litigation is inadequate, may upon written notice to all its tenants, apply to the Township Council for relief on the basis that the allowance for expenses is inadequate.

Plaintiff asserts that the Ordinance was enacted because of litigation instituted by POMA in 1988, demanding that the Township provide garbage service for the apartment complexes. The matter is presently on appeal before us. Plaintiff also alleges in

its complaint that the Ordinance was enacted as a direct result of the 1989 and 1990 tax appeals filed by POMA members. According to plaintiff's complaint, the acting Township mayor threatened POMA that the Township would enact measures designed to thwart apartment owners' businesses unless they "[withdrew] its pending tax appeals and garbage litigation." One of the alleged threats included a reinstitution of the ordinance requiring property owners to remit tax refunds to tenants.

The opinion of the trial judge focused on the right of the Township to enact the Ordinance in the absence of rent control. The judge acknowledged that if the Township readopted a rent control ordinance, it could require owners to remit 75% of any tax refund to tenants. He concluded that there was a clear distinction between rents calculated by rent control and rents calculated by free market principles.

The trial judge's finding that the Ordinance was unconstitutional appears to rest primarily on due process grounds. He stated:

I do, though, think that there's a fundamental problem here which simply involves depriving somebody of property by naked legislative fiat that is not tied into any fair conceptualization of rights and is not tied in to any due process of law....

I think what's happening is that the governing body of Parsippany is legislatively deciding to take a property owner's property away from him and make him give it to somebody else, period. I think it's a negative appropriation of property and not a legal or Constitutional appropriation of property.

█ The Legislature entered the arena of property tax rebates to tenants many years ago. *N.J.S.A.* 54:4–6.2 to –8.2, known as the Tenants' Property Tax Rebate Act (Act), as originally enacted, *L.*1976, *c.* 63, applied only to tax reductions attributed to the State aid received from the State Aid for Schools Fund established in *N.J.S.A.* 54A:9–25. It was amended by *L.*1977, *c.* 81 to include reductions below the base year, but has always excluded "judgments entered by county boards of taxation, the Division of Tax Appeals, ... or by courts of competent jurisdiction." *N.J.S.A.* 54:4–6.3b.

The Act provides:

> An owner of qualified real rental property shall provide a property tax rebate to the tenants thereof as provided in this act for each year in which he receives a property tax reduction. [*N.J.S.A.* 54:4-6.4.]

Property tax reduction is defined as:

> the difference between the amount of property tax paid or payable in any year on any qualified real rental property ... and the amount of property tax paid in the base year.... [*N.J.S.A.* 54:4-6.3b.]

The penalty for violation of the Act is not more than $100 for each offense. *N.J.S.A.* 54:4-6.12.

The constitutionality of the Act was challenged in *Cold Indian Springs Corp. v. Township of Ocean*, 81 *N.J.* 502, 410 *A.*2d 652 (1980). In holding that the Act did not violate constitutional principles, the Supreme Court observed:

> The act, passed in 1976, is social legislation and constitutes a form of economic regulation. It is based on the legislative recognition that rent levels for qualified real rental property anticipate the tax burden on the rental property. Accordingly, when there is a reduction in that burden, the act requires that the property owner share the reduction with his tenants. [*Id.* at 507–08, 410 *A.*2d 652 (footnote omitted).]

We do not make a determination as to whether state law preempts municipalities from enacting similar legislation. *See Mack Paramus Co. v. Mayor and Counc. of Boro. of Paramus*, 103 *N.J.* 564, 573, 511 *A.*2d 1179 (1986) (factors to be considered on preemption determination) (citing *Overlook Terrace Management Corp. v. Rent Control Bd. of W. New York*, 71 *N.J.* 451, 461, 366 *A.*2d 321 (1976)); *see also Dome Realty, Inc. v. City of Paterson*, 83 *N.J.* 212, 232, 416 *A.*2d 334 (1980) (although municipality may not regulate an area which State has preempted, "the Legislature's intent to prevent local initiatives must appear clearly").

The Township asserts that municipalities are given broad power to legislate except where the power is limited by statute, citing numerous examples of ordinances, ranging from rent control to soil removal, which municipalities have enacted under their "police power." It argues that because the owners could receive "windfall profits" from a tax refund, "the public good requires governmental regulation to address the issue." According to the Township, it

defies logic that a municipality must enact a rent control ordinance merely to enact a tax rebate ordinance.

*N.J.S.A.* 40:48–1 sets forth thirty specific acts which fall within a municipality's powers. Tax appeals and rent control are not enumerated within these specified powers. *N.J.S.A.* 40:48–2 sets forth the following general language which governs the police powers afforded municipalities:

> Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the *good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants,* and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law. [*N.J.S.A.* 40:48–2 (emphasis added).]

The New Jersey Constitution provides:

> The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law. [*N.J. Const.* art. IV, § 7, ¶ 11.]

In *Wagner v. Mayor and Counc. of City of Newark,* 24 *N.J.* 467, 479, 132 *A.*2d 794 (1957), Justice Vanderbilt wrote that there is "a clear recognition that rent control was not a matter within the realm of municipal power without express authority from the State." In the case of *Inganamort v. Borough of Fort Lee,* 62 *N.J.* 521, 303 *A.*2d 298 (1973), at a time when no statute authorized rent control, our Supreme Court reviewed the holding in *Wagner, supra,* and rejected a narrow view of *N.J.S.A.* 40:48–2, thereby concluding that the general police powers conferred upon municipalities included the power to enact rent control ordinances. *Id.* at 536, 303 *A.*2d 298. The Court recognized that rent control ordinances interfere with the right to contract, but nonetheless held:

> That control of rents affects the exercise of the right to contract with respect to property is undeniable. But the right to contract is subject to the police power and no less so when the police power is exerted at a municipal level. . . . Whether an ordinance relates to zoning, or contains a housing code, or imposes upon the

landlord duties relating to health, it necessarily limits the use of property or the right to contract with respect to it. That the ordinance imposes restraints which the State law does not, does not spell out a conflict between State and local law. On the contrary the absence of a statutory restraint is the very occasion for municipal initiative. The police power is vested in local government to the very end that the right of property may be restrained when it ought to be because of a sufficient local need. [*Id.* at 537–38, 303 *A*.2d 298.]

The holding in *Inganamort* was, however, prefaced by the following precondition:

We must assume there is a critical shortage of the housing covered by the several ordinances here involved and that tenants, trapped by the fact, are being exploited. The judgments were entered on pretrial motions in which this factual premise was not challenged. Hence we have the naked legal issue whether the police power delegated to these municipalities includes the power to deal with the evil of inordinate rent arising out of a housing shortage. [*Id.* at 527, 303 *A*.2d 298.]

■ In *Gateway Apartments, Inc. v. Mayor and Tp. Counc. of Nutley,* 605 *F.Supp.* 1161 (D.N.J.1985), a federal court upheld the constitutionality of an ordinance which required landlords to remit tax rebates to tenants where the municipality had a rent control ordinance in effect. The language of the opinion indicates that the decision was based in part on the existence of the rent control ordinance.

The [tax rebate] ordinance is predicated upon certain obvious realities in the world of residential landlord and tenant relations. *Rents are based upon expenses, and real estate taxes make up a substantial portion of those expenses.* In establishing rents and in seeking increases in rent-controlled communities, taxes are frequently relied upon in reaching that determination. [*Id.* at 1163 (emphasis added).]

We have no reservations as to the rational basis for such an enactment where it is part of a rent control scheme. In such circumstances it is statutorily authorized and may be viewed as a necessary part of the rent control structure.

■ For a tax rebate ordinance, standing alone without a rent control ordinance, to be a valid exercise of municipal power, either the Legislature or the State Constitution must provide a source for that power. *See Ringlieb v. Township of Parsippany–Troy Hills,* 59 *N.J.* 348, 351, 283 *A*.2d 97 (1971) (municipalities have no power other than that delegated by the Legislature or the State Constitution); *West Point Island Civic Ass'n v. Township Comm. of the Tp. of Dover,* 54 *N.J.* 339, 345, 255 *A*.2d 237 (1969) (holding

that powers of a municipality are wholly derived from state statute); *see also Borough of Pitman v. Skokowski,* 193 *N.J.Super.* 215, 220, 473 *A.*2d 100 (App.Div.1984) ("A municipality is a creature of the state and thus necessarily subordinate to its creator and can exercise only such powers as may be granted to it by the Legislature.").

In *Holmdel Builders Ass'n v. Township of Holmdel,* 121 *N.J.* 550, 583 *A.*2d 277 (1990), the Supreme Court stated:

[M]unicipalities possess "only such rights and powers as have been granted in express terms, or arise by necessary or fair implication, or are incident to the powers expressly conferred, or are essential to the declared objects and purposes of the municipality." *Edwards v. Mayor of Moonachie,* 3 *N.J.* 17, 22 [68 *A.*2d 744] (1949). The authority delegated to them, however, is to be construed liberally in their favor. [*Id.* 121 *N.J.* at 566, 583 *A.*2d 277.]

An ordinance based on the municipality's police power will not stand if it is not related to the "public health, safety, morals or general welfare" of the community. *Supercade Cherry Hill, Inc. v. Borough of Eatontown,* 178 *N.J.Super.* 152, 154, 428 *A.*2d 530 (App.Div.1981).

In *Upper Deerfield Tp. v. Seabrook Hous. Corp.,* 255 *N.J.Super.* 218, 604 *A.*2d 972 (App.Div.1992), we upheld the Law Division judge's decision striking down an ordinance that required owners of vacant, abandoned buildings to obtain an occupancy permit prior to selling the structures. *See Upper Deerfield Tp. v. Seabrook Hous. Corp.,* 255 *N.J.Super.* 682, 605 *A.*2d 1160 (Law Div.1991). We cited the Supreme Court's holding in *Quick Chek Food Stores v. Township of Springfield,* 83 *N.J.* 438, 416 *A.*2d 840 (1980), for the proposition that "a municipality may enact regulatory ordinances on any subject of *local concern which is reasonably related to legitimate objects of public health, safety and welfare,* provided the State has not preempted the field." *Upper Deerfield Tp., supra,* 255 *N.J.Super.* at 222, 604 *A.*2d 972 (emphasis added). We concluded that the ordinance did "not reasonably and rationally achieve the public need." *Id.* at 225, 604 *A.*2d 972.

As we have noted, the authority to control how a property owner must distribute any money received from a successful

tax appeal or reduction is not an expressly delegated authority. The issue then is whether the power arises by implication as essential to the declared objects and purposes of the municipality's police function of protecting the health, safety, and welfare of its residents. *See N.J.S.A.* 40:48–2. As can be seen from a review of the holdings in *Wagner, supra,* and *Inganamort, supra,* the answer is not an easy one, except to the extent that such an enactment cannot stand absent a finding that conditions in the municipality require invoking police powers.

The present ordinance is not authorized by *N.J.S.A.* 2A:42–77 empowering municipalities to establish rent control ordinances. Under *N.J.S.A.* 2A:42–77, a municipality is empowered to adopt rent control only when it "finds that *the health and safety of residents are impaired or threatened by the existence of substandard multiple dwellings.*" (Emphasis added). That statute specifically requires that any rent control ordinance adopted by the municipal governing body set forth "such a finding and provid[e] for the regulation of rents and the possession of rental space in substandard multiple dwellings." There has been no such finding here.

The Township allowed rent control to expire. Therefore, the governing body has not found that present housing conditions constitute an emergency. Further, there is no evidence that the rise in rents, demonstrated in the preamble of the Ordinance to be more rapid than that reflected by the tax increases, was caused by landlords taking extra profits. There may have been even greater increases in other expenses related to the property, such as insurance, repairs or maintenance, than is even reflected by the rent increases which were passed on to the tenants.

The purpose of the present Ordinance is declared to be the prevention of windfall profits to landlords. The Ordinance, however, provides no means of determining whether such profits exist. Rather, it takes money which belongs to a property owner and distributes it to tenants without establishing a basis to support the premise that the tenant has a right to the funds. Without the

structure of rent control, there is no way of knowing whether property owners are receiving sufficient rent to provide a profit. At any given time, there may exist a surplus of housing which compels the property owner to rent at a minimal profit or even at a net loss.

Our Supreme Court made the following astute observations concerning police powers in a zoning case:

> Use restrictions upon real property must find their justification in some aspect of the police power, reasonably exerted for the public welfare. The police function cannot be expressed in terms of a definitive formula that will automatically resolve every case, for its quality and scope are commensurate with the public exigencies arising from ever-changing social and economic conditions. *But it is basic to zoning, as with every exercise of the police power, that it be contained by the rule of reason; constitutional due process and equal protection ordain that the exertion of the authority shall not go beyond the public need;* there cannot be unnecessary and excessive restrictions upon the use of private property or the pursuit of useful activities; a substantial intrusion upon the right infringes essential individual liberties immune to legislative interference. The restrictions may be so unreasonable as to be confiscatory, and the regulation then transgresses the organic law as arbitrary and oppressive. *Brandon v. Board of Com'rs of Town of Montclair,* 124 *N.J.L.* 135 [11 *A.*2d 304] (Sup.Ct.1940), affirmed 125 *N.J.L.* 367 [15 *A.*2d 598] (E. & A.1940).
>
> The police power is the public right to reasonable regulation for the common good and welfare. The constitutional principles of due process and equal protection demand that the exercise of the power be devoid of unreason and arbitrariness, and the means selected for the fulfillment of the policy bear a real and substantial relation to that end. In a word, the authority coincides with the essential public need. [*Katobimar Realty Co. v. Webster,* 20 *N.J.* 114, 122–23 [118 *A.*2d 824] (1955) (emphasis added).]

*See also Southland Corp. v. Township of Edison,* 217 *N.J.Super.* 158, 173–74, 524 *A.*2d 1336 (Law Div.1986), *aff'd,* 220 *N.J.Super.* 294, 531 *A.*2d 1361 (App.Div.1987).

 Where there is a proper finding as required under the rent control statute, that local housing conditions are substandard, the purpose of the Ordinance can clearly be seen to promote the health, safety, morals or general welfare of the public. Here, however, the blanket statement that tenants pay property taxes through rent is merely an abstract principle, and it does not prove the foundation necessary for municipal action. We have not been shown why invoking such municipal police powers is reasonably

required by local conditions in the Township. As stated in *Wagner, supra,* 24 *N.J.* at 478, 132 *A.*2d 794:

The broad grant of power under *R.S.* 40:48–2, *supra,* and *N.J.S.A.* 40:69A–29 and 30, *supra,* relates to matters of local concern which may be determined to be necessary and proper for the good and welfare of local inhabitants, and *not to those matters involving state police or in the realm of affairs of general public interest and applicability.* [Emphasis added.]

Adherence to this principle will ensure that a municipality's conflicting self-interest—discouraging tax appeals and suits by property owners charged for municipal services not rendered—will not be the motivating force for enactment of such legislation. In the absence of rent control, the matter of distribution of tax rebates and refunds is properly one of state policy as it is of "general public interest and applicability." *Ibid.; see Township of Chester v. Panicucci,* 62 *N.J.* 94, 99, 299 *A.*2d 385 (1973).

The taking of property from one private party (the property owners) and distributing it to another private party (the tenants) without a demonstrable basis constitutes an *ultra vires* act beyond the jurisdiction of the Township. "A municipal corporation's acts utterly beyond its jurisdiction are *ultra vires* in primary sense and void." *Upper Deerfield Tp., supra,* 255 *N.J.Super.* at 690, 605 *A.*2d 1160.

We conclude that the Township's "Tax and Rental Rebates" Ordinance involves matters which are not properly of local concern. The Ordinance is therefore *ultra vires* as beyond the power of the municipality. Further, it is arbitrary and unreasonable, thereby violating the due process and equal protection rights guaranteed by the Fourteenth Amendment.

Affirmed.