NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4309-12T2

ESSEX COUNTY CORRECTIONS
OFFICERS PBA LOCAL NO. 382,
NEW JERSEY STATE POLICEMEN'S
BENEVOLENT ASSOCIATION,
JOSEPH AMATO, and ANTHONY WIENERS,

    Plaintiffs-Appellants,

v.

COUNTY OF ESSEX, a body politic
and corporate of the State of
New Jersey, BOARD OF CHOSEN
FREEHOLDERS OF THE COUNTY OF
ESSEX, a body politic and
corporate of the State of
New Jersey, EDUCATION AND HEALTH
CENTERS OF AMERICA, INC., and
COMMUNITY EDUCATION CENTERS, INC.,

    Defendants-Respondents.

| APPROVED FOR PUBLICATION |
| :---: |
| December 30, 2014 |
| APPELLATE DIVISION |

_____

Argued October 16, 2014 — Decided  December 30, 2014

Before Judges Fuentes, Ashrafi, and
O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No.
L-646-13.

Robert A. Fagella argued the cause for
appellants (Zazzali, Fagella, Nowak,
Kleinbaum & Friedman, attorneys; Mr.
Fagella, of counsel and on the brief;
Colin M. Lynch and Flavio L. Komuves,
on the brief).

Ronald L. Israel argued the cause for respondents County of Essex and the Essex County Board of Chosen Freeholders (Wolff & Samson, P.C., attorneys; Arthur S. Goldstein, of counsel; Robert L. Hornby and Mauro G. Tucci, Jr., on the joint brief).

William Harla argued the cause for respondent Education and Health Centers of America, Inc. (DeCotiis, FitzPatrick & Cole, attorneys; Mr. Harla, on the joint brief).

Angelo J. Genova argued the cause for respondent Community Education Centers, Inc. (Genova Burns Giantomasi & Webster, L.L.C., attorneys; Mr. Genova, on the joint brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

In this appeal, we consider whether Essex County can lawfully contract for housing and treatment services for a large population of its county jail inmates at two privately owned and operated facilities, Delaney Hall and Logan Hall.

Plaintiffs allege that Essex County's contract for the housing of inmates at those facilities is an unlawful "privatization" of county jail operations. Defendants contend that the County contracted for rehabilitative and similar inmate treatment services at the two facilities, as it is authorized to do. The trial court agreed with defendants and dismissed the case.

We conclude that plaintiffs did not prove by means of the summary action they requested, see Rule 4:67, that Essex County is in fact delegating to a private entity its core governmental function of confining inmates apart from appropriate treatment services. However, because of the public importance of the issue, and in accordance with Rule 4:67-5, plaintiffs should have the opportunity to pursue the matter as a plenary case and to expand the record. We remand to the trial court and direct that the matter be converted to a plenary action if plaintiffs make such a request.

I.

Plaintiffs are the union and the local that represent Essex County corrections officers, as well as the presidents of those labor organizations. Defendants are Essex County and its Board of Chosen Freeholders ("the County"), and also Education and Health Centers of America, Inc. ("EHCA") and Community Education Centers, Inc. ("CEC"), the private companies that provide the disputed housing and other inmate services at Delaney and Logan Halls.

In August 2012, plaintiffs filed a complaint alleging that the current contract the County awarded to EHCA is an ultra vires delegation of the County's statutory duty to confine and maintain inmates — in other words, that the County acted without

the legal authority that only the State Legislature can grant to it. Plaintiffs sought a declaratory judgment and injunctive relief prohibiting defendants from continuing the housing of County inmates at Delaney and Logan Halls.

Together, those two facilities hold more than 1000 inmate beds. They are operated by CEC, a for-profit company closely associated with EHCA, which is the non-profit company that entered into a publicly-bid contract with the County. The two companies have separate boards of directors but share some of the same executives and are owned by some of the same persons.

Plaintiffs requested that the court proceed by way of summary proceedings under Rule 4:67. Both the County and the defendant companies moved to dismiss the lawsuit. They asserted that a county government has the authority to enter into such a contract for inmate services and housing, and that, in this case, the County has not delegated responsibility for confining inmates to private entities because it retains control of its inmates and oversees the operation of Delaney and Logan Halls. Both sides in the litigation agreed that the matter could be decided by the court as a matter of law without pre-trial discovery and without a trial.

The Assignment Judge for Essex County[1] considered the parties' submissions, heard argument, and decided by written opinion and order dated April 30, 2013, that plaintiffs' complaint does not state a claim upon which relief can be granted and therefore must be dismissed. Initially, the court agreed with defendants that the action should be treated as one in lieu of prerogative writs pursuant to Rule 4:69. But the court disagreed with defendants' assertion that the complaint was untimely because it was filed some nine months after the contract was awarded. See R. 4:69-6 (providing generally that an action in lieu of prerogative writs shall be commenced within forty-five days of its accrual but also permitting enlargement of the time "where it is manifest that the interest of justice so requires"). On the merits of plaintiffs' claims, the court concluded that the County did not violate the law in entering into the contract for private operation of alternative inmate housing and services.

On appeal, plaintiffs contend the court erred as a matter of law because of three related reasons: (1) the Legislature placed authority and responsibility upon county government to house jail inmates and granted <u>no statutory authority</u> for the

---

[1] The Assignment Judge is the supervising judge of a trial court vicinage in New Jersey. See R. 1:33-2(b).

County to contract for provision of those governmental functions by a private entity; (2) the County's contractual arrangement is preempted by the Legislature's detailed statutory scheme for inmate substance abuse and other rehabilitation services; and (3) the County may not delegate to a private entity the core governmental function of "keeping" inmates in custody. Before addressing these contentions, we will summarize the facts as developed in the summary action.

## II.

For more than twenty years, the County has contracted with private entities to provide services for some of its inmates, including housing at Delaney Hall since 2000. In 1990, the County entered into a consent judgment in consolidated federal lawsuits that alleged jail overcrowding and health and safety deficiencies at the County jail. The consent judgment directed the County to provide funding for a jail population management program focused on pre-trial supervision and services and on treatment of inmates who were substance abusers. Essex Cnty. Jail Inmates v. Amato, Case Nos. 87-871, 82-1945 (D.N.J. Jan. 5, 1990). In the ensuing years, the County entered into successive contracts for private operation of some jail services, at first the management of a bail and pretrial release program for a minimum of sixty inmates, and later, programs for inmate

treatment services, which included the housing of the inmates placed in the programs.

In March 2000, the freeholders awarded such a contract to EHCA for a period of seven months at a cost of $3 million. "Minimum security" inmates were to be eligible for the treatment services. There was to be no "mingling" of those inmates with other jail detainees. The contract required that EHCA provide "treatment services" and "other services," including "laundry, barber and mail . . . preventing walk-aways, maintaining order and managing the resident Inmate population . . . establish[ing] an Inmate work program, seasonal Inmate recreation and leisure time programs and literacy training programs." EHCA implemented the contract by housing approximately 255 inmates at Delaney Hall, which is a privately-owned building located on Doremus Avenue in Newark near the County jail.

In May 2006, the freeholders approved an amendment to the EHCA contract to increase the maximum contract price to $15 million and to add Logan Hall as a residential facility for inmates. Logan Hall is also a privately-owned facility, located in another part of Newark. In 2008, the freeholders again amended EHCA's contract, expanding its services and the maximum contract price to $24 million per year for the next three years.

7                                                    A-4309-12T2

The contract that is at issue in this appeal expanded yet again the inmate housing and service programs provided by EHCA. On October 19, 2011, the Department of Corrections publicly advertised a Request for Proposal (RFP) seeking a vendor for the "(1) provision of Alternative Incarceration/Residential Treatment for certain inmates who otherwise would be incarcerated at the Essex County Correctional Facilities and (2) to house Immigration and Customs Enforcement (ICE) detainees." The RFP called for a program of "comprehensive care of Essex County prisoners, including assessment, treatment and substance abuse services." It stated further: "These services shall include, but not be limited to security operations, substance abuse treatment, personality/risk assessment, education, recreation, and life skills training." It specified that the vendor should provide "at least 1,000 beds."

The RFP described the profile of potential inmates: "inmates will comprise a cross-section of the general inmate population and will be referred to residential [sic] based on the custody level, offense of conviction or pre-trial offense at the discretion of the Department of Corrections." The RFP also directed that the vendor "shall be responsible for preventing walk-aways, maintaining order and managing the population."

EHCA was the only bidder for the public contract.  It proposed "to provide housing, medical and treatment services for male and female adult, pre-adjudicated and sentenced County inmates at the company's Delaney Hall and Logan Hall facilities in Newark, New Jersey."  With the approval of the State Office of Purchasing, the County awarded the contract to EHCA on December 14, 2011, for "a five (5) year period commencing January 1, 2012 for the provision of the Services in an amount not to exceed $129,785,750.00 for the first three (3) years; subsequent years four (4) and five (5) [to] be calculated as stated and agreed to in the memorandum of agreement" of the parties.  The County applied for and received substantial State funding to pay the approximately $43 million maximum yearly cost of the contract.

EHCA's bid for the contract stated that CEC would actually provide the requested services through a subcontract with EHCA. CEC and EHCA operate under a 1996 "Support Services Provider Agreement," which has been amended in subsequent years through 2007.  CEC is incorporated as a for-profit corporation under the laws of Delaware and has its principal place of business in New Jersey.  EHCA's president formed CEC for the purpose of operating halfway houses, other jail facilities, and inmate treatment services.  At the time of this action, CEC was

A-4309-12T2

operating such facilities and services in seventeen states.  The

president of EHCA, Joseph J. Clancy, also serves as the chairman

and the chief executive officer of CEC.  Several other

executives hold positions in both CEC and EHCA.  Over the years,

CEC has received from EHCA all but two dollars of the $62 to $75

per diem rate of the County contracts for each inmate CEC housed

in its two facilities in Newark.

With respect to which inmates can be transferred to Delaney

and Logan Halls, the Essex County Department of Corrections has

formally established eligibility criteria.  Generally, Essex

County inmates are eligible if they are designated minimum or

medium custody status and do not have federal or state-level

detainers lodged against them.  Excluded from eligibility are

those inmates whose bail is set higher than $100,000 and those

charged with murder, kidnapping, escape, sexual assault,

carjacking, endangering the welfare of a child, or arson.

The security features of Delaney and Logan Halls include

"360 degrees . . . perimeter security barrier" monitored by

closed-circuit television.

> Entrance to the facility is closely
> monitored by staff and can only be
> accomplished through the Guard House that
> leads into a sally port, which is monitored
> by camera and by a manned 24-hour central
> office.  All windows are sealed and the
> safety glass/laminate combination has been
> tested to ensure its ability to withstand

breakage attempts using objects such as
rocks and hammers.

CEC has directors, managers, and supervisors to operate the two facilities and hires "counselors" to provide inmate services and to oversee the inmates as the functional equivalent of corrections officers.

The County contends it supervises the operations of Delaney and Logan Halls on a daily basis. The County's Department of Corrections issued a memorandum in August 2012 directing shift commanders at the County jail to assign a senior officer each day on each shift "to tour" and "to inspect" the living areas of the two facilities. Nevertheless, plaintiffs allege that many security breaches and disruptions have occurred at the two facilities. They allege that CEC's counselors receive a low rate of pay and are not adequately trained as corrections officers. In sum, plaintiffs argue the contract illegally delegated to private entities the "core governmental function" of confining and maintaining inmates and the County abdicated its own responsibilities and duties.

## III.

The parties dispute whether the Legislature has authorized county governments to enter into a private contract such as the one in this case. Plaintiffs argue there is no statutory authority affirmatively granting the County the power to

delegate operation and control of jail facilities to private companies, and so, the County does not have such power. Defendants respond that the County has broad power to execute its duties, and there is no statutory authority prohibiting county government from contracting with a private company to provide inmate services.

Our Supreme Court has stated that "the county is a creature of the State. Its existence and powers depend upon the Legislature's determinations. It is subject to the dominion of the Legislature." Clark v. Degnan, 83 N.J. 393, 400 (1980). Consequently, a county may "exercise only such powers as may be granted to it by the Legislature." Borough of Pittman v. Skokowski, 193 N.J. Super. 215, 220 (App. Div. 1984) (citing City of Camden v. Byrne, 82 N.J. 133, 157 (1980)).

The Legislature has enacted statutes that address the management and operation of county detention and penal facilities. See N.J.S.A. 30:8-1 to -69. Plaintiffs claim these statutory provisions grant no authority to the County to enter into a contract for the private operation of inmate confinement services. Specifically, plaintiffs contend the sheriff of a county is responsible for operating county jails and must "keep" all county inmates in such government controlled facilities.

A-4309-12T2

See N.J.S.A. 30:8-17.[2] The statutes also authorize a county board of chosen freeholders to take over the responsibility for the confinement of inmates. N.J.S.A. 30:8-19.[3] Where, as in this case, the freeholders have undertaken that responsibility, they must appoint a "keeper" or "warden" to be responsible for the confinement of inmates. See N.J.S.A. 30:8-22.[4] Plaintiffs contend these statutory provisions direct that control and custody of inmates "lies solely and exclusively with the County, its designated Warden and no one else."

Defendants respond that N.J.S.A. 30:8-19 must be read in conjunction with N.J.S.A. 30:8-23[5] and Article IV, section VII,

---

[2] N.J.S.A. 30:8-17 provides: "Except as otherwise in this chapter provided the sheriff of every county shall have the care, custody and control of the county jail or jails and all prisoners therein, and shall be responsible for the conduct of any keeper appointed by him."

[3] N.J.S.A. 30:8-19 provides: "It shall be lawful for the board of chosen freeholders of any county in this state to assume and thereafter to exercise the custody, rule, keeping and charge of the county jails in their respective counties, and of the prisoners therein . . . ."

[4] N.J.S.A. 30:8-22 provides: "All persons committed to a county jail which has been taken over by the board of chosen free-holders . . . shall be delivered to the keeper or warden of such jail and by him held in custody until discharged by due process of law."

[5] N.J.S.A. 30:8-23 provides: "the board of chosen freeholders . . . shall prescribe rules and regulations for the management and conduct of such jail, and the employment, maintenance and keeping of the prisoners therein . . . ."

paragraph 11 of the New Jersey Constitution,[6] and that these laws permit the freeholders to provide inmate services and related housing by means of a contract with a private entity. They urge affirmance of the trial court's decision that the County has "broad authority . . . to oversee and manage county correctional facilities" and that "[i]mplicitly and necessarily, this grant of authority includes the ability to procure the services needed to execute it."

Legislative intent is the "paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). Courts must "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (internal citations omitted). A court's "task requires that every effort be made to find vitality in the chosen language." In re Civil Commitment of J.M.B., 197 N.J. 563, 573, cert. denied, 558 U.S. 999, 130 S. Ct. 509, 175 L. Ed.

---

[6] N.J. Const. art. IV, §VII, ¶ 11 provides that the State Constitution shall be "liberally construed" in favor of counties with respect to any laws concerning them, and also states that "[t]he powers of counties . . . shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred . . . ."

2d 361 (2009). A court should not "resort to extrinsic interpretive aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation . . . ." DiProspero, supra, 183 N.J. at 492 (internal citations and quotation marks omitted).

We do not read the language of the cited statutes and constitutional provision as susceptible to only one interpretation. The statutes do not state expressly one way or the other whether a county may delegate to a private entity the responsibility for confining county inmates and providing inmate services to them. Cf. State, Comm'r of Health v. Bd. of Health of the Twp. of Morris, 208 N.J. Super. 415, 417-18 (App. Div.) (statute requiring municipality to hire full-time health officer was clear in its language and did not permit contracting of health officer's duties to a private entity), appeal dismissed, 107 N.J. 50 (1986).

Both sides in this dispute offer reasonable interpretations of the cited statutes and constitutional provision. Therefore, we must look beyond those provisions to resolve the dispute.

IV.

In a related argument, plaintiffs contend that, even if the statutes do not expressly prohibit the disputed contract, the Legislature has preempted the field of inmate confinement and

services and thus the County may not do what the Legislature has not specifically authorized in the statutes. Plaintiffs argue the Legislature intended to regulate county jail operations comprehensively through N.J.S.A. 30:8-1 through -69, and there is no room for the County to deviate from the express terms of those statutes.

Local action is preempted when the Legislature intended "its own actions, whether it exhausts the field or touches only part of it, to be exclusive." Mack Paramus Co. v. Mayor & Council of Paramus, 103 N.J. 564, 573 (1986) (internal quotation marks and citation omitted). "The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the Legislature intended to immobilize the [local governments] from dealing with local aspects otherwise within their power to act." Summer v. Twp. of Teaneck, 53 N.J. 548, 555 (1969).

To determine whether the Legislature intended to preempt a particular field, courts must make the following inquiries:

> 1. Does the [local governmental action] conflict with state law, either because of conflicting policies or operational effect (that is, does the [local action] forbid what the Legislature has permitted or does [it] permit what the Legislature has forbidden)?
>
> 2. Was the state law intended, expressly or impliedly, to be exclusive in the field?

16

3. Does the subject matter reflect a need for uniformity?

4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of [local] regulation?

5. Does the [local action] stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature?

[Overlook Terrace Mgmt. Corp. v. Rent Control Bd. of W. New York, 71 N.J. 451, 461-62 (1976) (internal citations omitted).]

Applying these tests, defendants dispute that the Legislature intended to preempt the field of operating county inmate facilities. They point to N.J.S.A. 30:8-16.1[7] and -16.2[8]

_____

[7] N.J.S.A. 30:8-16.1 provides:

It shall be lawful for the board of chosen freeholders of any county in this State to establish and maintain facilities to provide services for therapy for drug addicts or users while confined to the jail, workhouse or penitentiary of any such county. It shall also be lawful for such board to provide therapy for such drug addicts or users after discharge from the jail, workhouse or penitentiary. Such facilities may be provided as a part of the jail, workhouse or penitentiary, and at such other locations as the board shall determine. It shall also be lawful for such board to contract with any municipality or any other county to provide such needed facilities and services, and to pay the whole or any part of the cost of such facilities under such contract. Each board of chosen freeholders

(continued)

to support their argument that the Legislature left room for county government to act independently and in accordance with individual county needs.  Those statutes grant a county the discretion to provide alcohol and drug abuse counseling for inmates outside the operations of the county itself, but they make no specific reference to private contracting for those rehabilitative services.

More generally, defendants rely on N.J.S.A. 30:8-16.4, which provides for cooperation between the State and counties in distinguishing between violent inmates and those non-violent inmates that can be "dealt with more effectively in county correctional facilities and programs."  The statute makes reference to a State "financial assistance program for the

_____

(continued)
> is authorized to appropriate and expend the moneys necessary to carry out the purposes of this act.

[8] N.J.S.A. 30:8-16.2 provides:

> It shall be lawful for any board of chosen freeholders in this State to erect and maintain as a part of its jail, workhouse or penitentiary, a suitable building, buildings or additions for the treatment, while confined in such jail, workhouse or penitentiary, of inmates having a history of alcoholism; such board shall have power to appropriate and expend the moneys necessary in its judgment for such purpose.

construction and renovation of county correctional facilities" and to "viable alternatives to State confinement." N.J.S.A. 30:8-16.4.

These statutes do not expressly authorize contracting with a private entity for the provision of substance abuse, rehabilitation, and related services, but defendants contend they contradict a legislative intent to preempt the field of inmate services. Defendants emphasize a twenty-year history of the County providing inmate services through private contracts and also an established practice of confining County inmates at Delaney and Logan Halls. They also cite N.J.A.C. 10A:31-26.1(b) and (c) as regulatory authority for counties to contract with outside vendors to provide "[d]rug and alcohol addiction counseling," "[f]amily counseling," "[c]risis intervention," and "[v]ocational counseling."

We agree with defendants that these statutes and regulations indicate that the Legislature did not intend "its own [legislative] actions" pertinent to county correctional institutions "to be exclusive" of local decisions regarding how to provide certain inmate services. See Mack Paramus, supra, 103 N.J. at 573. "[A]n intent to occupy the field must appear clearly." Summer, supra, 53 N.J. at 554 (citing Kennedy v. City of Newark, 29 N.J. 178, 187 (1959)). Here, the Legislature

granted authority to county governments to devise means and methods to provide inmate rehabilitative and similar services. It did not preempt the action of counties in devising innovative ways to provide those services.

We conclude the doctrine of preemption does not prohibit the County from contracting with private entities for inmate rehabilitation and similar treatment services. Contrary to plaintiffs' contention, we further conclude that the County is not restricted by statute to providing such services within the County's own facilities. Since the housing of inmates who receive rehabilitative and similar services may be necessary in conjunction with providing those services, we conclude that the statutes upon which plaintiffs rely neither prohibit nor preempt the County from confining inmates who are in need of and receiving rehabilitative and similar services in private facilities such as Delaney and Logan Halls.

V.

Also with respect to inmate treatment services, plaintiffs contended in the trial court that the disputed contract violates N.J.S.A. 30:4-91.2,[9] which limits to non-profit entities any

---

[9] N.J.S.A. 30:4-91.2 provides:

> The commissioner [of the State Department of Corrections] or his duly authorized agent,

(continued)

private contract for the provision of inmate treatment services that includes confinement. Plaintiffs contended that the contract awarded to EHCA does not comply with that statute because Delaney and Logan Halls are operated by a profit-making entity, CEC.

N.J.S.A. 30:4-91.2, however, applies to the State Department of Corrections and not to county governments or jails. On appeal, plaintiffs have not repeated their claim that the statute applies literally in this case to prohibit the County's disputed 2011 contract. Instead, they contend the statute renders untenable the claim that the County is permitted to contract, in effect, with a for-profit entity such as CEC. Plaintiffs question how the County could exercise greater

---

(continued)

> may designate as a place of confinement any available, suitable, and appropriate institution or facility whether owned by the State or otherwise, and may at any time transfer a person from one place of confinement to another.
>
> The word "facility" shall include private nonprofit community-based residential treatment centers which provide for the care, custody, subsistence, education, training and welfare of inmates.
>
> Any such private nonprofit community-based residential treatment center must be certified annually by the commissioner as a secure and appropriately supervised place of confinement.

authority to transfer custody and care of its inmates to a private profit-making entity when the State is prohibited from doing so with its inmates.

Defendants respond that the State Department of Corrections and the State Office of Purchasing have consistently approved its contracts with EHCA, with full knowledge that inmates are confined at Delaney and Logan Halls and that EHCA subcontracts with CEC to operate those facilities.

We agree with defendants that N.J.S.A. 30:4-91.2 is not applicable to the disputed contract. We cannot discern in a statute directed to the operations of State correctional facilities a legislative intent to apply the same controls to correctional facilities and inmates under the jurisdiction of county government. We decline to apply N.J.S.A. 30:4-91.2 beyond its express terms.

## VI.

Plaintiffs dispute that the purpose of Delaney and Logan Halls is to provide inmate rehabilitative and similar services. In the trial court, all parties agreed to proceed summarily, and they represented that the essential facts in this case are undisputed for the purposes of the court's legal decision with respect to the County's authority. But the two sides differ

significantly in their characterization of the services provided by EHCA and CEC.

Plaintiffs contend the disputed 2011 contract is essentially for alternative jail facilities and that the primary function of EHCA and CEC is to confine a large population of County inmates. They contend CEC does not offer substance abuse and rehabilitative services to all the inmates housed at Delaney and Logan Halls but mainly performs the County's function of housing and guarding inmates in those facilities. Plaintiffs assert that the County's reference to "residential inmate treatment services" is a euphemism for the operation of a privatized jail to confine a large percentage of County jail inmates without regard to their need for rehabilitative or related services.

Plaintiffs concede that ancillary services for inmates, such as provision of food, medical care, and transportation, may be accomplished through private contracts. They distinguish those services from the "core governmental function" of confining inmates. They contend the scope and actual effect of the disputed 2011 contract is an abdication of the County's responsibility to confine and sustain its inmates and, therefore, is a violation of the non-delegation doctrine.

A-4309-12T2

The non-delegation doctrine is grounded in "state and federal doctrines of substantive due process . . . ." Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 163 (1978). "[P]ublic officials [are] charged with governmental responsibility they cannot lawfully abdicate or bargain away." Rutgers, State Univ. v. Rutgers Council of AAUP Chapters, 256 N.J. Super. 104, 115 (App. Div. 1992), aff'd, 131 N.J. 118 (1993) (internal quotation marks omitted).

"The general rule is that a power or duty delegated by statute to an administrative agency cannot be subdelegated in the absence of any indication that the legislature so intends." Mercer Council #4 v. Alloway, 119 N.J. Super. 94, 99 (App. Div.), aff'd, 61 N.J. 516 (1972). "To be constitutionally sustainable, a delegation must be narrowly limited, reasonable, and surrounded with stringent safeguards to protect against the possibility of arbitrary or self-serving action detrimental to third parties or the public good generally." Ridgefield Park, supra, 78 N.J. at 163-64; accord Paterson Police PBA Local #1 v. City of Paterson, 87 N.J. 78, 94 (1981).

Defendants argue that the non-delegation doctrine applies to "governmental policymaking power," Ridgefield Park, supra, 78 N.J. at 163, not to routine administrative and operational functions of government. We disagree that the non-delegation

doctrine is so limited. The doctrine also applies to functions that are traditionally the core operational duty of government.

Courts have found certain functions to be central to the purposes and duties of government, and those functions cannot be delegated to private entities without express legislative or constitutional authority. See 515 Assocs. v. City of Newark, 132 N.J. 180, 188 (1993) (law enforcement and protective functions of the police); Prudential Ins. Co. v. U.S. Gypsum Co., 991 F.2d 1080, 1086 (3d Cir. 1993) (adjudicatory responsibility of the courts); Skehan v. State Sys. of Higher Educ., 815 F.2d 244, 248 (3d Cir. 1987) (public education); see also Johnson v. DOT, 98 P.3d 773, 778 (Utah Ct. App. 2004) (listing examples of "nondelegable [core] functions and powers" of government under Utah law), aff'd, 133 P.3d 402 (Utah 2006).

Even functions that are less evidently part of the core powers and duties of government have been held to require legislative authority before a local government may delegate them to private entities. Compare Reid Dev. Corp. v. Twp. of Parsippany-Troy Hills, 10 N.J. 229, 233 (1952) (discussing the functions of local government in providing a public water supply), with N.J.S.A. 40:62-96 (permitting private contracts to construct and operate water systems). See also Eckert v. Town of W. Orange, 90 N.J.L. 545, 548 (E. & A. 1917) (holding that a

municipality was under no obligation to collect and dispose of garbage from private properties); N.J.S.A. 40:66-4 (permitting municipalities to enter into private contracts for street cleaning and garbage collection).

Here, plaintiffs make a strong argument that the confining of inmates, and the concomitant responsibility for their welfare and the security of the public, is a core governmental function that must be performed by the designated governmental agency, unless the Legislature has expressly permitted its delegation to private entities. We agree and so hold.

## VII.

We cannot conclude, however, on the record presented in the summary proceedings that the County has in fact delegated the core governmental function of confining County inmates to EHCA and CEC. The issue that the summary record does not satisfactorily resolve in favor of either party is whether Delaney and Logan Halls are being utilized for the permitted purposes of providing substance abuse, rehabilitative, and similar services to inmates, or whether they are merely alternative jail facilities for the incarceration of County inmates.

Throughout their joint brief in this appeal, defendants describe the function of the disputed contract and Delaney and

Logan Halls as providing "residential inmate treatment services" rather than merely confining inmates. They point to the history of "the treatment program at issue" and describe the disputed contract in terms of "a residential inmate treatment program as an alternative to traditional incarceration."

That description is further supported by CEC's website, which is included in the summary record and states: "Delaney Hall provides residential reentry treatment services for several referring sources and its goal is to reduce offender recidivism." Delaney Hall, Cmty. Educ. Ctrs. Inc., http://www.cecintl.com/facilities_rr_nj_006.html (last visited Dec. 11, 2014). The website adds:

> Delaney Hall treatment services include assessments, substance abuse treatment, life skills training, individual and group counseling, relapse prevention, anger management, and education and GED services.
>
> . . . .
>
> The Family Services program at Delaney Hall serves to reunite residents with their families through controlled and therapeutic settings and activities.
>
> [Ibid.]

The website describes similar inmate services provided at Logan Hall, adding that "[t]he services . . . focus on life skills to give residents the opportunity to reenter society in a productive manner." Logan Hall, Cmty. Educ. Ctrs. Inc.,

A-4309-12T2

http://www.cecintl.com/facilities_rr_nj_005.html (last visited Dec. 11, 2014).

As defendants describe the history of the contracts with EHCA, the services provided in the initial contracts beginning in 2000 were "predominantly for those who have drug or alcohol abuse problems." Defendants list the County resolutions over the years that expanded the services under EHCA contracts but continued to describe them as "residential treatment programs."

Furthermore, defendants contend that the County maintains oversight and supervision of Delaney and Logan Halls. They point to the inspections of those facilities that senior county corrections officers must conduct on every shift every day, and they emphasize the County's determination of who is eligible to be transferred to those facilities. Defendants add that the County retains responsibility for transportation of inmates, and that the disputed contract requires CEC to report any significant event at the facilities that may require County oversight or disciplinary action against an inmate. They contend that inmate discipline is determined by the County and not by CEC or EHCA.

Defendants emphasize that the State Department of Corrections not only approved the inmate treatment services at Delaney and Logan Halls but, in 2012, approved $18 million in

State aid for that year to implement the programs under the disputed contract. According to defendants, the State funding is a far cry from the State prohibiting or preempting the County's delegation of such services to private entities. Thus, defendants contend that the function and primary purpose of the disputed contract is not to provide substitute, privately-operated jails, but instead to provide necessary substance abuse, rehabilitative, and similar treatment services for inmates.

Plaintiffs reply by pointing to the 2007 description of the services provided under the EHCA contract — "alternative incarceration/residential treatment" — significantly adding "alternative incarceration" to the prior description of the contracted services. The modified description was carried over into the disputed 2011 RFP and the resulting contract with EHCA. Plaintiffs argue that the emphasis now is on "alternative incarceration," and they point to the large number of inmates that are housed in Delaney and Logan Halls and the absence of an eligibility criterion that designates an inmate's need for substance abuse or other rehabilitative services.

While plaintiffs' evidence is informative, and their argument potentially persuasive, they did not produce sufficient proofs in this summary action that the County has in fact

contracted for the private operation of its inmate confinement duties rather than for necessary services for its inmates. On this record, we cannot conclude that Delaney and Logan Halls constitute privately run jails and not distinct correctional facilities that combine authorized inmate rehabilitative and similar services with the need to maintain those inmates in confinement.

Plaintiffs requested that the matter proceed as a summary action under Rule 4:67, without discovery of evidence and without a trial. But the matter is of vital importance to the County, to inmates, to plaintiffs and the private-party defendants, and to the public generally. The current five-year contract will expire at the end of 2016, and the County may choose to advertise for another similar contract and to continue the operation of Delaney and Logan Halls in the same manner. The parties and the public are entitled to a definitive decision on the issue of whether the private contracts are lawful, and such a decision should be based on an adequate evidentiary record. Therefore, we think it appropriate to remand to the trial court to consider our discussion of the issues and our holdings, and to explore with the parties whether they wish to conduct discovery and to proceed in a plenary action, including a trial if necessary. See Rule 4:67-5.

A-4309-12T2

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4309-12T2