DAVIS, Judge.
Douglas Duvall, Gail Duvall, Leonard Clark, Howard Clark, Joyce Clark, and Walter Asherbraner (the Homeowners) challenge the trial court’s final declaratory judgment entered in favor of Fair Lane Acres, Inc. Because the judgment constituted an unlawful taking of property rights, we reverse.
Fair Lane Acres (the Community) is a mobile home subdivision originally consisting of five platted sections totaling approximately 704 lots. The plats for the Community were recorded beginning in 1956. Original deed restrictions also were recorded at that time, but by the face of the restrictions, they expired in 1979. By the terms of those 1956 restrictions, the property owners were provided a package of services that included the use of the Community’s recreational facilities (recreation hall, pool, and shuffleboard courts) and street lighting, as well as water and sewer services, which were provided through the Community’s internal water distribution lines, sewer collection lines, and lift station. The costs of providing these services were paid by the Community’s residents through annual assessments to entities created by the developer, i.e., Fair Lane Utilities, Inc., and Fair Lane Water Company. The original plans did not call for the creation of a homeowners association for providing these services.
Subsequently, Manatee County agreed to provide the residents of the Community with water and sewer services utilizing the *670 systems already established as part of the Community’s infrastructure. In 1996, a majority of the Community’s residents established the homeowners association Fair Lane Acres, Inc. (the Association); however, the Homeowners opted not to join the Association. The Association then purchased the Community’s common areas and infrastructure facilities from Fair Lane Utilities and Fair Lane Water Company. Since that time, the Association has continuously provided water and sewer services to the Homeowners. However, unlike the Association’s members, the Homeowners have paid for only the water and sewer services and have not contributed to the costs of maintaining the infrastructure or the common areas.
Due to the passage of a Manatee County ordinance, the rates charged by the Association for water and sewer services, including the contribution to the cost of maintaining the systems, are now regulated by the Florida Public Service Commission (FPSC). FPSC allows entities such as the Association exemptions from regulatory requirements if they sell the services to only homeowner association members. By the terms of the Association’s Articles of Incorporation, all the residents of the Community, including the Homeowners, are technically “members” of the Association. The Association thus applied for and was granted the FPSC exemption in 1997.
In April 2000, the Association requested that the residents of the Community consent to submit their properties to the provisions of a recorded Declaration of Covenant and Restrictions by which the Community was designated as “housing for older persons” as defined by federal law. The Declaration specifically states that at least one person residing on each parcel must be older than fifty-five years of age and that all persons living there must be at least forty-five years of age. Based on the Declaration, the Association’s Articles of Incorporation were amended to reflect that the purpose of the Association was to provide housing for older persons. The Association also amended its Bylaws to provide that “[n]o sale, conveyance, or lease of a lot, and/or the dwelling unit thereon, shall be binding on the [Association] until the Board [of Directors] renders its written approval.” The Bylaws also provide that the Board of Directors will have the authority to establish the fee to be assessed for maintenance of the common areas, including the water and sewer systems.
A majority of the Community’s residents consented to submitting their properties to the provisions of the Declaration; the Homeowners, however, did not. Similarly, the Homeowners refused to comply with the Association’s requirement that they execute an Agreement for Water and Sewer Utility Services, which would obligate the Homeowners to “comply with all governmental regulations and the Corporation’s Articles of Incorporation, Bylaws, and Rules and Regulations as promulgated by the Board of Directors.”
The Association then brought a declaratory action against the Homeowners, seeking a determination that it was not required to unbundle the services it provided in order to offer the Homeowners only water and sewer services but not other common area services[1] and that it could require the Homeowners to execute the Agreement, subjecting them to the Association’s Articles of Incorporation and By *671 laws. The trial court entered its final judgment, declaring that if the Homeowners “desire to utilize the services available from [the Association], they must contract to do so” and that “the contract terms ... may include a provision indicating that [the Homeowners] are subject to the Articles of Incorporation and By-laws.” The trial court also determined that the Homeowners “may not arbitrarily choose which services and facilities to which they will subscribe.” Finally, the trial court came to the specific conclusion that “[t]he arguments raised by [the Homeowners] that their property rights outweigh the [trial court’s] above findings are not well founded” because “the restriction of occupancy to persons fifty-five ... years of age or older is a restriction of occupancy, not a restriction on property rights.” And in any event, according to the trial court, since the Homeowners have not consented to the terms of the Declaration of Covenants and Restrictions, its age limitation provision would not apply to them. It is this final judgment from which the Homeowners now appeal.
We agree with the Homeowners that the trial court erred in requiring them to execute the Agreement in order to continue receiving water and sewer services from the Association. The Agreement specifically requires them to submit to the applicability of the Association’s Articles of Incorporation and Bylaws, both of which implement the conversion of the Community to “housing for older persons” by placing age limitations on the residents and requiring Association approval prior to any sale of the Homeowners’ real property.
The most valuable aspect of the ownership of property is the right to use it. Any infringement on the owner’s full and free use of privately owned property, whether the result of physical limitations or governmentally enacted restrictions, is a direct limitation on, and diminution of, the value of the property and the value of its ownership and accordingly triggers constitutional protections.
Snyder v. Bd. of Cnty. Comm’rs, 595 So.2d 65, 70 (Fla. 5th DCA 1991), quashed on other grounds, 627 So.2d 469 (Fla.1993). As such, the trial court erred in concluding that the age restriction was a restriction on occupancy and not a restriction on “property rights.”
To impose a limitation on who can use and enjoy property is a direct restriction on the Homeowners’ ownership rights in their properties. See Black’s Law Dictionary 1215 (9th ed. 2009) (defining “ownership” as “[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others”). Similarly, to restrict the ability to transfer property by imposing an obligation to seek the approval of the Association is an improper infringement on the Homeowners’ property rights. These property rights are constitutionally protected, and the trial court erred in ordering the Homeowners to sign the Agreement by which they would be required to surrender these rights. See Dep’t of Law Enforcement v. Real Prop., 588 So.2d 957, 964 (Fla.1991) (“Property rights are among the basic substantive rights expressly protected by the Florida Constitution. Art. I, § 2; Fla. Const.”).
Accordingly, we reverse the trial court’s order and remand for further proceedings consistent with this opinion.
Reversed and remanded.
KHOUZAM and MORRIS, JJ., Concur.

. Although Manatee County does provide water and sewer services directly to several properties located on the peripheral lots of the Community, it will not agree to provide the Homeowners with water and sewer services unless the Association consents, and the Association has refused to do so.