NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1384-22

NEW JERSEY REALTORS,

      Plaintiff-Respondent,

v.

TOWNSHIP OF BERKELEY,

      Defendant-Appellant.

_____

> APPROVED FOR PUBLICATION
> July 31, 2024
> APPELLATE DIVISION

Argued November 8, 2023 – Decided July 31, 2024

Before Judges Haas, Gooden Brown, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0991-22.

Christopher J. Dasti argued the cause for appellant (Dasti & Associates, PC, attorneys; Christopher J. Dasti, of counsel and on the briefs; Jeffrey D. Cheney, on the briefs).

Barry S. Goodman argued the cause for respondent (Greenbaum, Rowe, Smith & Davis LLP, attorneys; Barry S. Goodman and Conor J. Hennessey, of counsel and on the brief).

    The opinion of the court was delivered by

GOODEN BROWN, P.J.A.D.

This appeal requires us to determine the validity of a local ordinance restricting ownership at certain senior housing communities. Defendant Township of Berkeley (Township) appeals from the December 2, 2022, Law Division order granting summary judgment to plaintiff New Jersey Realtors (NJR). The order effectively invalidated Berkeley Township Ordinance No. 22-13-OA (the Ordinance), which amended certain land use provisions to limit property ownership in certain senior housing communities to persons aged fifty-five and older. NJR sued the Township after the Ordinance was enacted, arguing that such a restriction violated the Fair Housing Act (FHA), 42 U.S.C. § 3604(a), and the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-12(h), because both statutes prohibit discrimination based on familial status. According to NJR, by setting a minimum age for property ownership in retirement communities, the ordinance was discriminatory, and the restriction did not fall within the limited housing for older persons exemption. Finding that the ordinance violated the FHA and the NJLAD, the judge invalidated the ordinance. We agree and affirm.

I.

The facts are undisputed. On March 29, 2022, the Township amended and supplemented multiple sections of Chapter 35, the "Land Development" section of the Township's municipal code, by enacting the Ordinance. The

Ordinance changed existing land use provisions that required <u>occupancy</u> of age-restricted units by persons aged fifty-five years or older, to now require <u>ownership</u> of such units by persons aged fifty-five or older within certain retirement communities.

Specifically, the Ordinance amended the definition of "Planned Residential Retirement Community" (PRRC) under Section 35-101.1 to read as follows:

> "PRRC[]" shall mean a community having one . . . or more parcels of land with a contiguous total acreage of at least one hundred . . . acres except within the RGR Zone which must have a continuous total acreage of at least forty . . . acres, forming a land block to be dedicated to the use of a planned retirement community; through its corporation, association or owners, the land shall be restricted by bylaws, rules, regulations and restrictions of record, and services for the benefit of permanent residents of communities which mandate that in accordance with 24 [C.F.R. §] 100.306[(a)(4)], 24 [C.F.R. §] 100.[306(a)(5)] and 24 [C.F.R. §] 100.[306(a)(6)] <u>only persons fifty-five . . . years of age and older, along with either their respective spouse or domestic partner, or otherwise if expressly authorized by the PRRC's bylaws, rules, regulations and restrictions of record, shall purchase a Lot or Living Unit in a PRRC</u> to assure that the PRRC does not have its age-restricted status pursuant to 42 U.S.C. [§§ 3601 to 3631] revoked and otherwise which require that residents comply with the provisions, stipulations and restrictions regarding senior communities allowing occupancy of units by persons fifty-five . . . years of age or older, as contained in the Federal Fair Housing Act, as amended in 1988.   Ownership of the

3

residential units and the area comprising a PRRC may be in accordance with the provisions of N.J.S.A. 45:22A-21[ to -56], or the ownership may be as is commonly referred to as "fee simple" with open space to be maintained through assessment against property owners within the confines of the community.

[(Emphasis added).]

Next, the Ordinance amended Section 35-101.12 to state that:

The maintenance of the green areas, private roadways, driveways, common courtyards, recreational areas, lakes and other improvements not intended to be individually owned shall be provided by an association organized under the Nonprofit Corporation Statute of the State of New Jersey (Title 15) and formed for that purpose. The applicant shall, in the form restrictions and covenants to be recorded, provided that title to the aforesaid enumerated areas shall be conveyed to the association, whose members shall be owners of lots who are only persons fifty-five . . . years of age or older, along with either their respective spouse or domestic partner, or other interests, or to such other persons as a majority of the members shall designate from time to time by duly adopted bylaws. Such restrictions and covenants shall mandate that in accordance with 24 [C.F.R. §] 100.306[(a)(4)], 24 [C.F.R. §] 100.306[(a)(5)] and 24 [C.F.R. §] 100.306[(a)(6)] only persons fifty-five . . . years of age or older, along with either their respective spouse or domestic partner, or otherwise if expressly authorized by the PRRC's bylaws, rules, regulations and restrictions of record, shall purchase a Lot or Living Unit in a PRRC to assure that the PRRC does not have its age-restricted status pursuant to 42 U.S.C. [§ 3601 to 3631] revoked and further provide that the same shall not be altered, amended, voided or released, in whole or in part, without the written consent of the Township of Berkeley by

resolution duly adopted at a regular meeting of the Township Council and except upon proper notice being given by the applicant or any other party in interest to all owners of lots in the PRRC.

[(Emphasis added).]

Finally, Section 35-101.14(c) was amended as follows:

The documents shall be forwarded to the Board and shall be subject to the review of the Board and of the Township Council as to their adequacy in ensuring that the community shall be constituted so as to be consistent with the purposes and requirements of this section, including the mandate that in accordance with 24 [C.F.R. §] 100.306[(a)(4)], 24 [C.F.R. §] 100.306[(a)(5)] and 24 [C.F.R. §] 100.306[(a)(6)] only persons fifty-five . . . of age or older, along with either their respective spouse or domestic partner, or otherwise if expressly authorized by the PRRC's bylaws, rules, regulations and restrictions of record shall purchase a Lot or Living Unit in a PRRC to assure that the PRRC does not have its age-restricted status pursuant to 42 U.S.C. [§ 3601 to 3631] revoked. The proposed documents and restrictions shall indicate a comprehensive and equitable program for the orderly transition of control over the homeowners' association from the applicant or the developer to the actual homeowners in the community.

[(Emphasis added).]

On May 11, 2022, NJR filed a complaint in lieu of prerogative writs against the Township seeking an order declaring the Ordinance "invalid and unenforceable" on the grounds that limiting property ownership, rather than occupancy, violated federal and state law. In the complaint, NJR asserted that

5

the Ordinance violates the FHA and the NJLAD because both statutes prohibit familial status discrimination, which the Ordinance violates by setting a minimum age for property ownership in PRRCs, and the restriction does not fall within the statutory exemption. See 42 U.S.C. § 3604(a); N.J.S.A. 10:5-12.5(a). According to the complaint, the Ordinance is preempted by the FHA and the NJLAD, is arbitrary, capricious, and unreasonable, and violates the State Constitution, N.J. Const. art. 1, ¶ 1.[1]

On August 12, 2022, NJR moved for summary judgment. In support, NJR relied on a July 5, 2017, letter from the Commissioner of the Department of Community Affairs (DCA) responding to NJR's inquiries on the legality of restricting home ownership in age-restricted communities. The letter stated:

> [DCA] has received your correspondence regarding age-restricted communities limiting the ownership of homes to those over the age of [fifty-five] or [sixty-two]. At my direction, staff reviewed the current federal and state law regarding age-restricted communities with regards to ownership and occupancy.
>
> Our research yielded the results you expected. Both the federal and state laws limit the age of the

---

[1] Article I, Paragraph 1 of the New Jersey Constitution provides that "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."

occupants of the home in age-restricted communities, not the age of the owner of the home. Therefore, age-restricted communities cannot prohibit the sale of a home based on the owner's age. However, they may require the owner or purchaser to certify that the units will be occupied by a person that meets the age restriction.

Additionally, in response to a request from the Township's Administrator for clarification of the July 5, 2017, letter, in an October 26, 2017, letter, the DCA Commissioner informed the Township in pertinent part:

> I am writing in response to your letter requesting clarification, and additional information, regarding my letter dated July 5, 2017, which dealt with the ownership of housing units in age-restricted communities. That letter was written in response to a question from [NJR]. In that letter, I indicated that while federal and State law permit, in certain instances, a community to restrict occupancy to persons based on age, those laws do not include similar language regarding the owners of units in such communities. That conclusion was based on a review of the applicable statutes.
>
> In your letter, you raise several questions. First, you inquire as to whether my letter was meant to suggest that a community could, in fact, restrict the age of owners, but that communities are not currently doing so. That is not what my letter was stating; rather, as noted above, age-restricted communities may restrict the occupants, but not the owners of units, based on age.

On December 2, 2022, following oral argument, the judge entered an order granting NJR's motion and invalidating the Ordinance. In an oral

7 <span>A-1384-22</span>

decision, the judge determined that the Ordinance could not survive the challenge because it conflicted with the FHA and the NJLAD by "restrict[ing] ownership," not occupancy, "of people who are over [fifty-five]." The judge acknowledged the DCA letters, noting that "the [DCA] made a specific finding that . . . the exception . . . under the [FHA] and the [NJLAD] . . . relates to occupancy and [not] ownership." The judge also ruled that the Ordinance concerned an "area that has been preempted by . . . design on the federal and state level . . . [and] . . . conflicts with the housing regulations and the scheme to provide . . . age-restricted housing." Finally, the judge commented on the "unintended consequences" of the Ordinance, which included preventing an older owner from transferring title to the property to a non-qualifying younger person "for purposes of estate planning." This appeal followed.

On appeal, the Township argues the judge "improperly granted [NJR's] motion for summary judgment as the Ordinance is constitutional and neither invalidated nor preempted" by the FHA or the NJLAD.

II.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

8

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. R. 4:46-2(c); see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted. R. 4:46-2(c); see Brill, 142 N.J. at 540.
>
> [Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016).]

Where there is no material fact in dispute, as here, "we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

The issue before us involves the interpretation of the FHA and the NJLAD. Issues of "statutory construction" are also subject to "de novo" review. Cashin v. Bello, 223 N.J. 328, 335 (2015). In interpreting a statute, our Supreme Court recently provided the following guidance:

> Our role when interpreting a statute "is to determine and give effect to the Legislature's intent." DYFS v. A.L., 213 N.J. 1, 20 (2013).
>
> To achieve that goal, "we look first to the plain language of the statute," ibid., attributing to statutory words "their ordinary meaning and significance and read[ing] them in context with related provisions so as to give sense to the legislation as a whole," DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted). If the statutory text has a clear meaning, that meaning controls, but if the plain language is ambiguous or leads "to an absurd result or to a result at odds with the objective of the overall legislative scheme," then we will analyze extrinsic sources such as legislative history to best determine legislative intent. DCPP v. Y.N., 220 N.J. 165, 178 (2014).
>
> [N.J. Div. of Child. Prot. & Permanency v. B.P., 257 N.J. 361, 374 (2024) (alteration in original).]

"'[W]e interpret a regulation in the same manner that we would interpret a statute.'" In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 542 (2016) (quoting US Bank, N.A. v. Hough, 210 N.J. 187, 199 (2012)).

Under the FHA, 42 U.S.C. § 3604, discrimination in the sale or rental of housing on the basis of familial status is strictly prohibited. See Seniors Civ. Liberties Ass'n v. Kemp, 761 F. Supp. 1528, 1541 (M.D. Fla. 1991) ("[T]he Fair Housing Amendments Act of 1988 applies to both rental and ownership housing."). To that end, subject to certain exemptions, 42 U.S.C. § 3604 makes it unlawful to "refuse to sell or rent[,] . . . or otherwise make

10

unavailable or deny, a dwelling to any person;" "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental[,] . . . or in the provision or services or facilities in connection therewith;" and "[t]o make, print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental . . . that indicates any preference, limitation, or discrimination" based upon familial status. "The Act defines the term 'familial status' as 'one or more individuals (who have not attained the age of [eighteen] years)' living with a parent or legal guardian." Massaro v. Mainlands Section 1 & 2 Civic Ass'n, 3 F.3d 1472, 1476 (11th Cir. 1993) (quoting 42 U.S.C. § 3602(k)).

"Members of Congress determined the need for such legislation based on studies and hearings indicating that families with children were having difficulty securing housing because of age limitations." Ibid. To address concerns regarding the impact of prohibiting housing discrimination based on familial status in retirement communities, "where elderly residents had bought or rented homes with the expectation that they would be able to live without the noise and hazards of children," ibid., Congress expressly exempted qualified housing for older persons from compliance. Specifically, 42 U.S.C. § 3607(b) provides that "[n]othing in [the FHA] . . . . regarding familial status appl[ies] with respect to housing for older persons." See Seniors Civ. Liberties

11

Ass'n, 761 F. Supp. at 1541 ("In short, it was the legislature's intent to open up all forms of housing to parents with children under [eighteen] except those that are designed for older persons and qualify for an exemption." (Emphasis omitted)). As such, "[t]he housing for older persons exemptions permit communities satisfying certain requirements to discriminate on the basis of familial status." Balvage v. Ryderwood Improvement & Serv. Ass'n, Inc., 642 F.3d 765, 769 (9th Cir. 2011).

The housing for older persons exemptions "apply to three types of housing, including, as relevant here, housing for persons [fifty-five] years of age or older." Ibid.[2] To qualify for the exemption, the housing must be:

> (C) intended and operated for occupancy by persons [fifty-five] years of age or older, and—
>
> > (i) at least [eighty] percent of the occupied units are occupied by at least one person who is [fifty-five] years of age or older;
> >
> > (ii) the housing facility or community publishes and adheres to policies and procedures that demonstrate the intent required under this subparagraph; and

---

[2] "Although not relevant here, the exemptions also include (1) housing provided under certain state or federal programs specifically designed and operated to assist elderly persons and (2) housing intended for, and solely occupied by, persons [sixty-two] years of age or older." Balvage, 642 F.3d at 769 n.2 (citing 42 U.S.C. § 3607(b)(2)(A)-(B)).

(iii) the housing facility or community complies with rules issued by the Secretary for verification of occupancy, which shall—

(I) provide for verification by reliable surveys and affidavits; and

(II) include examples of the types of policies and procedures relevant to a determination of compliance with the requirement of clause (ii). Such surveys and affidavits shall be admissible in administrative and judicial proceedings for the purposes of such verification.

[42 U.S.C. § 3607(b)(2)(C).]

Noticeably, the exemption only addresses "occupancy" and is silent on whether it is permissible to restrict ownership to persons fifty-five or older. Ibid. The Code of Federal Regulations (CFR), which governs the application of the exemption, also makes no mention of ownership, and instead explains how the eighty percent occupancy requirement can be satisfied, 24 C.F.R. §100.305, how a housing facility or community must demonstrate its intent to operate as housing designed for occupancy for persons fifty-five years of age or older, 24 C.F.R. § 100.306, and how to verify compliance with the eighty percent occupancy requirement, 24 C.F.R. § 100.307.

To date, New Jersey courts have not expressly addressed whether age-related ownership restrictions are permitted under the FHA. Other jurisdictions have rendered tangential decisions without tackling the issue head

13

on.    Some courts appear to treat ownership and occupancy restrictions synonymously, while other courts warn that ownership restrictions infringe upon constitutionally protected property rights.   For example, in <u>Balvage</u>, where defendant homeowners' association restricted "ownership and residence . . . to persons . . . [fifty-five] years of age or older," the "sole issue" in the lawsuit filed by residents alleging discriminatory housing practices in violation of the FHA was whether defendant was "exempt from the FHA's prohibitions on familial status discrimination under . . . the housing for older persons exemptions set out in § 3607(b)."   642 F.3d at 776.

In contrast, in <u>Duvall v. Fair Lane Acres, Inc.</u>, 50 So. 3d 668, 671 (Fla. Dist. Ct. App. 2010), a Florida appellate court reversed a trial court order that an age restriction imposed on homeowners by a homeowners' association "was a restriction on occupancy and not a restriction on 'property rights.'"   In determining that "the judgment constituted an unlawful taking of property rights," <u>id.</u> at 669, the court reasoned:

> To impose a limitation on who can use and enjoy property is a direct restriction on the Homeowners' ownership rights in their properties. <u>See</u> <u>Black's Law Dictionary</u> 1215 (9th ed. 2009) (defining "ownership" as "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others").  Similarly, to restrict the ability to transfer property by imposing an obligation to seek the approval of the Association is an improper infringement on the Homeowners'

14

property rights. These property rights are constitutionally protected, and the trial court erred in ordering the Homeowners to sign the Agreement by which they would be required to surrender these rights. See [Dep't of Law Enf't v. Real Prop., 588 So. 2d 957, 964 (Fla. 1991)] ("Property rights are among the basic substantive rights expressly protected by the Florida Constitution. Art. I, § 2, Fla. Const.").

[Duvall, 50 So. 3d at 671 (first alteration in original).]

Other than the ownership restriction, based on the FHA's plain language, the Ordinance meets the requirements of the housing for older persons exemption. See 42 U.S.C. § 3607(b)(2)(C). The Ordinance defines and restricts PRRCs to the required level of occupancy by residents aged fifty-five years or older, clearly expressing the intent to create housing for older persons. In fact, NJR does not dispute that the PRRCs would otherwise comply with the FHA's occupancy threshold requirements. Instead, NJR asserts the Ordinance is "facially discriminatory" as a matter of law and "violative of the [FHA]." NJR invites us to construe the FHA's silence on ownership as a prohibition against it, reasoning that if the ability to regulate ownership is not explicitly permissible, it is "inherently discriminatory" because of the "discriminatory impact it would have on people who are protected under the [FHA] on the basis of familial status."

"We have scrupulously required that state and municipal regulations conform to the [FHA]." United Prop. Owners Ass'n of Belmar v. Borough of

Belmar, 343 N.J. Super. 1, 48 (App. Div. 2001). On its face, 42 U.S.C. § 3604 does not expressly permit or preclude an age-restricted community from limiting home ownership to persons fifty-five years of age or older. However, subject to certain exemptions, it does prohibit discriminatory acts, including refusing to sell a dwelling to any person, discriminating against any person in the terms or conditions of sale, or indicating any preference with respect to the sale based upon familial status. See ibid.

Discrimination on the basis of familial status does not violate the FHA if the housing for older persons exemption applies. See 42 USC § 3607(b)(1). Critically, the FHA's housing for older persons exemption permits restrictions on occupancy, not ownership, to persons fifty-five years and older. Thus, the exemption does not expressly permit the restriction on ownership embodied in the Ordinance. "As a general matter, the primary goal of the [FHA] is to limit discrimination in the housing arena." Putnam Fam. P'ship v. City of Yucaipa, 673 F.3d 920, 931 (9th Cir. 2012). Considering both the text and the underlying purpose of the FHA, we can reach only one conclusion. Because the exemption does not apply and the Ordinance's restriction on ownership in age-restricted communities discriminates on the basis of familial status, we conclude that the Ordinance violates 42 U.S.C. § 3604 and is therefore unlawful.

16

We reach a similar conclusion with respect to the NJLAD. Like the FHA, the NJLAD prohibits housing discrimination on the basis of familial status, with an exception for qualified housing for older persons. N.J.S.A. 10:5-12(h); 10:5-5(n) ("[No] provision under this act regarding discrimination on the basis of familial status appl[ies] with respect to housing for older persons.").

Pertinent here, the NJLAD defines housing for older persons[3] as housing that is:

> (3) intended and operated for occupancy by at least one person [fifty-five] years of age or older per unit. In determining whether housing qualifies as housing for older persons under this paragraph, the Attorney General shall adopt regulations which require at least the following factors:
>
> > (a) the existence of significant facilities and services specifically designed to meet the physical or social needs of older persons, or if the provision of such facilities and services is not practicable, that such housing is necessary to provide important housing opportunities for older persons; and

---

[3] Although not relevant here, the exemptions also include (1) housing provided under certain State or federal programs "specifically designed and operated to assist [elderly] persons;" and (2) housing "intended for, and solely occupied by, persons [sixty-two] years of age or older." N.J.S.A. 10:5-5(mm)(1), (2).

(b) that at least [eighty] percent of the units are occupied by at least one person [fifty-five] years of age or older per unit; and

(c) the publication of, and adherence to, policies and procedures which demonstrate an intent by the owner or manager to provide housing for persons [fifty-five] years of age or older.

[N.J.S.A. 10:5-5(mm)(3).]

Similar to the CFR, our State regulations provide more detailed guidance on the qualifications for the housing for older persons exemption. N.J.A.C. 13:15-1.5. Still, both the NJLAD and its attendant regulations only delineate occupancy restrictions and make no mention of ownership restrictions. N.J.S.A. 10:5-5(mm); N.J.A.C. 13:15-1.5. However, in 2019, N.J.A.C. 13:15-1.2(a) was amended to state that "[n]othing in the requirements of [the housing for older persons regulations] shall be construed to restrict the age of any purchaser or grantee of housing who does not reside in, or intend to reside in, such housing."

The amendment was added after the Division on Civil Rights (DCR) received public comments concerning retirement communities restricting occupancy:

Commenters [two] through [thirty-three] expressed substantially similar concerns regarding the requirements for an exemption to the [NJLAD's] ban

on housing discrimination based on familial status. The commenters assert that some entities operating and managing housing communities restricted to occupancy by persons [sixty-two] or over as defined in N.J.A.C. 13:15-1.4, or restricted to occupancy by persons [fifty-five] and over as defined in N.J.A.C. 13:15-1.5, are restricting the ages of the owners as well as the occupants. These commenters note that State law and [f]ederal law restrict the ages of the occupants, but do not restrict the ages of non-occupant owners of such properties. The commenters request amendment of the rule to clarify that individuals under the ages of [fifty-five] or [sixty-two] can purchase a home in age-restricted communities "so long as they certify the occupants of that home will be over the age of [fifty-five] or [sixty-two]." One commenter specifically requested adding clarifying language to N.J.A.C. 13:15-1.4(a) and 1.5(d).

[51 N.J.R. 216(a).]

DCR responded as follows:

DCR agrees that the [NJLAD's] definitions of housing for older persons address only the ages of the occupants of any housing, and do not address the ages of non-occupant owners of such housing. Accordingly, as adopted, DCR has added clarifying language to N.J.A.C. 13:15-1.2(a) to prevent any inaccurate interpretation of the [NJLAD] or the rule. DCR declines, however, to add the provision "so long as they certify that the unit will be occupied by persons [fifty-five or sixty-two] years of age or over" to the rules. Such a certification is already required by a New Jersey statute governing age-restricted communities, which is administered by [DCA]. See N.J.S.A. 45:22A-46.2. However, no such certification is required by the [NJLAD]. To ensure consistency with the relevant language in the [NJLAD], DCR has

19

determined that N.J.A.C. 13:15-1.2, rather than N.J.A.C. 13:15-1.4 and 1.5, should be changed.

[51 N.J.R. 216(a).]

A plain reading of N.J.A.C. 13:15-1.2(a) clarifies that the housing for older persons exemption applies only to occupancy, not ownership. Thus, considering the text and the underlying purpose of the NJLAD, we conclude that any age restriction imposed on ownership in PRRCs is a discriminatory housing practice that violates the NJLAD on the basis of familial status. As such, we agree with the judge that the Ordinance violates the NJLAD and is therefore unlawful.

Given our analysis, we are also convinced that the Ordinance is preempted by the FHA and the NJLAD. "[A] court may declare an ordinance invalid if it . . . is preempted by superior legal authority." Rumson Ests., Inc. v. Mayor of Fair Haven, 177 N.J. 338, 351 (2003) (internal citation omitted); see United Bldg. & Constr. Trades Council v. Mayor & Council of Camden, 88 N.J. 317, 343 (1982) (commenting that "[w]hen a state statute has preempted a field by supplying a complete system of law on subject, an ordinance dealing with the same subject is void"), rev'd on other grounds, 465 U.S. 208 (1984).

In Overlook Terrace Management Corp. v. Rent Control Board, our Supreme Court explained that "[p]reemption is a judicially created principle based on the proposition that a municipality, which is an agent of the State,

cannot act contrary to the State." 71 N.J. 451, 461 (1976) (citing Summer v.

Teaneck, 53 N.J. 548, 554 (1969)).

> Preemption analysis calls for the answer initially to whether the field or subject matter in which the ordinance operates, including its effects, is the same as that in which the State has acted. If not, then preemption is clearly inapplicable. An affirmative answer calls for a further search for "[i]t is not enough that the Legislature has legislated upon the subject . . . ."
>
> [Ibid. (alteration in original) (citations omitted) (quoting Summer, 53 N.J. at 554).]

If the threshold question is answered affirmatively, then five questions should be considered to determine whether a municipal ordinance is preempted by state law:

> 1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)?
>
> 2. Was the state law intended, expressly or impliedly, to be exclusive in the field?
>
> 3. Does the subject matter reflect a need for uniformity? . . . .
>
> 4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?
>
> 5. Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature?

[Id. at 461-62 (citations omitted).]

Consideration of the <u>Overlook</u> factors leads us to conclude that the Ordinance is preempted by the FHA and the NJLAD. Based on our earlier analysis, it is apparent that the Ordinance conflicts with the FHA and the NJLAD, the interpretation of which is the very issue before us. Application of that factor alone weighs heavily in favor of preemption. The remaining factors are met as well. "Local action is preempted when the Legislature intended 'its own actions, whether it exhausts the field or touches only part of it, to be exclusive.'" Essex Cnty. Corr. Officers PBA Loc. No. 382 v. Cnty. of Essex, 439 N.J. Super. 107, 121 (App. Div. 2014) (quoting Mack Paramus Co. v. Mayor & Council of Paramus, 103 N.J. 564, 573 (1986)).

Finally, although not reached by the judge, we address whether the Ordinance is a valid and reasonable exercise of police power or an arbitrary, capricious, and unreasonable act that exceeds the scope of the Township's authority. NJR maintains that the Ordinance is arbitrary and capricious because it "has no justifiable purpose, does not address any alleged problem (it instead creates problems), and goes well beyond any public need, in contradiction of established [f]ederal and State laws." According to NJR, the Ordinance would "harm existing unit owners within PRRCs by artificially

22

suppressing the value of their property" because potential buyers would be significantly limited by the age restriction.

The Township counters that the Ordinance is "reasonably calculated" to address "a local concern: rampant house-flipping and speculation by non-owner occupants, including corporations and persons under [fifty-five] years of age, which is making communities unaffordable for the very persons they are intended to serve – seniors on fixed incomes." The Township argues that the Ordinance is well within the scope of its authority to address this problem by "remov[ing] those unprotected classes of speculators from the classes of persons eligible to own units within [PRRCs]."

"[W]hen reviewing a municipal action, we apply a presumption of validity and reasonableness to adopted ordinances" and "do not 'pass on the wisdom of the ordinance; that is exclusively a legislative function.'" Timber Glen Phase III, LLC v. Twp. of Hamilton, 441 N.J. Super. 514, 523 (App. Div. 2015) (quoting Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 290 (2001)). The party challenging the ordinance bears the burden of showing that "the ordinance, 'in whole or in application to any particular property,' is arbitrary, capricious or unreasonable." Ibid. (quoting Pheasant Bridge, 169 N.J. at 289-90).

This presumption of validity is derived from our State Constitution:

23                                                          A-1384-22

> The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law.
>
> [N.J. Const., art. IV, § 7, ¶ 11.]

The presumption "embodies the principle that the police power of the State may be invested in local government to enable local government to discharge its role as an arm or agency of the State and to meet other needs of the community." Inganamort v. Ft. Lee, 62 N.J. 521, 528 (1973). However, the presumption is not without restraint.

> On the other side of the coin is the postulate that a local municipality is but a creature of the State, capable of exercising only those powers granted to it by the Legislature[, Wagner v. Mayor & Mun. Council of City of Newark, 24 N.J. 467 (1957)], and the equally important truism that the presumption of validity referred to is only a presumption and may be overcome or rebutted not only by clear evidence aliunde, but also by a showing on its face or in the light of facts of which judicial notice can be taken, of transgression of constitutional limitation or the bounds of reason. [Guill v. Mayor & Council of City of Hoboken, 21 N.J. 574, 581 (1956); State v. Wittenberg, 50 N.J. Super. 74, 78 (App. Div. 1957).]
>
> [Moyant v. Borough of Paramus, 30 N.J. 528, 534-35 (1959) (emphasis omitted).]

See also <u>Dome Realty, Inc. v. Paterson</u>, 83 N.J. 212, 225-26 (1980) (establishing "a three-part analysis for determining the propriety of an exercise of legislative authority by a municipality," including "whether any delegation of power to municipalities has been preempted by other State statutes dealing with the same subject matter").

In the area of land use, the Municipal Land Use Law (MLUL) authorizes municipalities to regulate the use of land and buildings within its borders. <u>See</u> N.J.S.A. 40:55D-1 to -163. Nonetheless, our courts have grappled with the competing interests of municipalities and property owners and have recognized that restrictions imposed by municipalities "must respect the constitutionally protected right to own and alienate property." <u>Ocean Cnty. Bd. of Realtors v. Twp. of Long Beach</u>, 252 N.J. Super. 443, 455 (Law Div. 1991).

> On the one hand, our courts have recognized the right of a municipality to "secure and maintain 'the blessings of quiet seclusion' and to make available to its inhabitants the refreshment of repose and the tranquility of solitude." On the other hand, our courts have consistently invalidated ordinances which unnecessarily and excessively restrict the use of private property.
>
> [<u>Id.</u> at 449-50 (citation omitted) (quoting <u>Berger v. State</u>, 71 N.J. 206, 223 (1976)).]

As such, we have held that neither the express nor implied powers of municipal regulation suggest "the power to . . . deny an owner a substantial

attribute of ownership and possession of real estate," or allow "an impermissible arrogation of governmental power." Repair Master, Inc. v. Borough of Paulsboro, 352 N.J. Super. 1, 10-11 (App. Div. 2002). To that end, restraints on the alienation of property are generally disfavored as a matter of public policy:

> It is firmly established that the policy of the law is against the imposition of restrictions upon the use and enjoyment of land and such restrictions are to be strictly construed. Restrictions tend to protect property, but they also impair alienability. Nor will equity aid one man to restrict another in the use of his[ or her] land unless the right to restrict is made manifest and clear in the restrictive covenant.
>
> [Hammett v. Rosensohn, 46 N.J. Super. 527, 535 (App. Div. 1957).]

Indeed, our case law has consistently supported "the fundamental, if not immutable, principle that 'zoning enabling acts authorize local regulation of "land use" and not regulation of the "identity or status" of owners or persons who occupy the land.'" Tirpak v. Borough of Point Pleasant Beach Bd. of Adjustment, 457 N.J. Super. 441, 443 (App. Div. 2019) (quoting 5 Edward H. Ziegler, Jr., Rathkopf's The Law of Zoning and Planning § 81.7 (4th ed. 2005)); see also DeFelice v. Zoning Bd. of Adjustment, 216 N.J. Super. 377, 381 (App. Div. 1987) ("[A] zoning board is charged with the regulation of land use and not with the person who owns or occupies the land.").

A-1384-22

This wariness of ownership restrictions stems from the constitutionally protected right to "own and dispose of real property, a right that is within the protective scope of the Fourteenth Amendment to the United States Constitution and Article I, § 1 of the New Jersey Constitution." Upper Deerfield Twp. v. Seabrook Hous. Corp., 255 N.J. Super. 218, 224 (App. Div. 1992). Although that right "is subject to the reasonable exercise of the police power," id. at 224-25, where there are extreme limitations on the right of ownership of private property, we have not hesitated to invalidate an ordinance. See, e.g., United Prop. Owners Assoc. v. Borough of Belmar, 185 N.J. Super. 163, 170-71 (App. Div. 1982) (invalidating provisions of ordinance precluding temporary or seasonal rentals on residential property as defined in the ordinance as "impermissibly arbitrary" and constituting "an unreasonable restraint on the use of private property"); see also Upper Deerfield Twp., 255 N.J. Super. at 219, 225 (invalidating ordinance "requiring the seller of land containing a structure to obtain a certificate of occupancy prior to sale regardless of its intended use by the prospective buyer" where "its literal application to every sale of real estate containing a structure reaches beyond the legitimate police power concerns of the municipality and becomes confiscatory").

27

In such situations, we have stressed that the appropriate inquiry in a case involving ownership restrictions "is whether the Township ordinance enacted under the police power, affecting private rights as it does, evidences a public need that justifies governmental action and whether the restrictions imposed unreasonably and irrationally exceed the public need." Id. at 225.

Applying that standard, we conclude the Ordinance unreasonably infringes upon the well-established and constitutionally protected right to own and sell property and the restriction unreasonably and irrationally exceeds the public need. See United Prop. Owners Assoc., 185 N.J. Super. at 170 (recognizing that "an extreme limitation on rights of ownership of private property" will be found to be arbitrary). Although the Township posits that enforcement of the restriction could accomplish a worthwhile purpose, the persons to whom alienation is prohibited could be substantial and impactful. As the judge pointed out, the restriction could impact to a significant degree the very seniors the Township seeks to protect by preventing owners over the age of fifty-five from transferring title to non-qualifying family members, a common practice in estate planning. Additionally, the Ordinance would adversely affect every owner's ability to sell by limiting the pool of eligible buyers.

On an alternative basis, we therefore invalidate the Ordinance on the ground that it is arbitrary and unreasonable. We do not believe the Legislature has imbued municipalities with the power to restrict ownership at senior housing communities as contemplated in the Ordinance and, as we stated in Repair Master, Inc.,

> This is a power we simply will not infer in light of the evidence and the history of our land use and occupancy jurisprudence. If this power is conferred on municipalities, we think it should be the result of legislative deliberation and evaluation of all the complex considerations, not from a judicially-created attempt to accommodate a single, though doubtlessly sincere, municipal effort. The problem could be compounded if other municipalities were to take this route and seek an arguably more desirable occupancy mix. Specific legislative approval should be a precondition to the exercise of a power we consider a radical regulatory development.
>
> [352 N.J. Super. at 14.]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION